ROBINSON TOWNSHIP v OTTAWA COUNTY BOARD OF ROAD
COMMISSIONERS

Docket No. 55207. Submitted February 2, 1982, at Grand Rapids.—
Decided March 19, 1982. Leave to appeal applied for.

The Township of Robinson, Ottawa County, enacted an ordinance
designating certain roads as truck routes and forbidding the
use of certain other roads by certain types of trucks, particu-
larly those hauling sand and gravel. The township sought to
have the Board of Road Commissioners of Ottawa County post
the necessary signs along the truck routes or to allow the
township to post the signs. The board refused, claiming that the
township had no authority to enact the ordinance, such author-
ity being in the board, or that, even if the township did have
the authority to enact the ordinance, it was void as being
unreasonable. The township brought an action against the
board seeking to compel the board to post the signs required by
the ordinance. The Ottawa Circuit Court, Calvin L. Bosman, J.,
held that the township had the authority to enact the truck
route ordinance, and that the county might properly refuse to
post signs for an unreasonable ordinance but that this ordi-
nance was reasonable. The board appeals. *Held:*

1. The township is authorized by both statute and the Michi-
gan Constitution to enact an ordinance such as the one in-
volved herein, without the need for obtaining permission from
the board of county road commissioners. Furthermore, the road
commission has an affirmative duty to post the necessary signs
to effect the provisions of the ordinance so long as the ordi-
nance is not unreasonable.

2. The burden was on the board to show that the ordinance
was unreasonable. The board has not carried that burden. The
Court is not persuaded that the ordinance was not a reasonable

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 49, 202, 203.

[3] 39 Am Jur 2d, Highways, Streets, and Bridges § 397 *et seq.*

[4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political
Subdivisions § 381.

[5] 73 Am Jur 2d, Statutes §§ 145, 160.

response to local and peculiar concerns in the township or that the classification of vehicles was discriminatory.

Affirmed.

1. COUNTIES — TOWNSHIPS — HIGHWAYS — STATUTES.

The former statute which transferred to the county board of road commissioners the responsibility for laying out, construction, improvement and maintenance of township roads left with the townships control in other respects such as weight limits, designation of truck routes and other traffic control matters (MCL 247.2; MSA 9.142).

2. MUNICIPAL CORPORATIONS — CONSTITUTIONAL LAW — HIGHWAYS.

The right of local units of government to reasonable control over highways and streets within their municipal boundaries is guaranteed by the Michigan Constitution (Const 1963, art 7, § 29).

3. COUNTIES — COUNTY ROAD COMMISSION — TRAFFIC ORDINANCES — STATUTES.

A county road commission has an affirmative duty to place and maintain traffic control devices which are necessary to carry out the provisions of local traffic ordinances (MCL 257.610; MSA 9.2310).

4. MUNICIPAL CORPORATIONS — ORDINANCES — TRUCK ROUTES — BURDEN OF PROOF.

A party challenging an ordinance regulating truck routes has the burden of showing that the ordinance is unreasonable.

5. STATUTES — LEGISLATIVE OBJECTIVES.

Legislation must bear a reasonable relation to a permissible legislative objective.

*Scholten & Fant* (by *Gregory J. Rappleye*), for plaintiff.

*Dalman, Murphy, Bidol & Bouwens, P.C.,* for defendant.

Before: ALLEN, P.J., and R. B. BURNS and J. H. GILLIS, JJ.

PER CURIAM. Which unit of government has the

authority to regulate truck traffic within a township's boundaries, the township or the board of county road commissioners? On March 27, 1979, the trial court held that a township may enact a truck route ordinance without the consent of the board of county road commissioners (BCRC), but that the commissioners could withhold their consent if the ordinance was unreasonable. On November 19, 1980, following an evidentiary trial on the merits, the trial court found the proposed ordinance to be reasonable. From both decisions and judgments entered in accordance therewith, defendant BCRC appeals of right. We affirm.

This question of apparent first impression comes to us on the following facts. On April 27, 1978, in response to citizen complaints concerning the high volume of gravel truck traffic on certain roads within the township, plaintiff enacted an ordinance designating certain roads within its boundaries as truck routes and forbidding the use of other roads by certain types of trucks. Plaintiff sought to have the BCRC post truck route signs along the designated routes or to permit the township to do so. By letter dated June 5, 1978, BCRC denied the request on grounds that the McNitt Act and its successor, MCL 247.2; MSA 9.142, had transferred authority over township roads to the boards of county road commissioners. Defendant further contended that even if the township had authority to enact the ordinance, the ordinance enacted was arbitrary, capricious, beneficial only to a certain class of persons, and, accordingly, was void as being unreasonable.

On June 26, 1978, the township filed a declaratory judgment action against BCRC to compel the posting of the necessary truck route signs. The township moved for summary judgment on the issue of the township's authority to enact a truck

route ordinance. Following submission of written arguments, the trial court held, in an opinion dated March 27, 1979, that the township did have legal authority to enact a reasonable truck route ordinance without first obtaining defendant's consent. However, the trial court then found that under authority of MCL 257.609(b); MSA 9.2309(b), which precludes local units of government from posting signs without permission of the board of road commissioners, the county might properly refuse to post signs for an unreasonable ordinance.

"The primary purpose of that act is to assure uniformity in traffic signs and signals. This court also believes that it is authority for the county board of road commissions to reject enforcement of ordinances which are unreasonable, either by themselves or as they may relate to other townships by creating a 'chaotic patchwork quilt' of truck routes. By virtue of the constitutional grant of authority in article 7, § 29 and case law, any ordinance enacted must be reasonable. *Fenton Gravel Co, Inc v Village of Fenton,* 371 Mich 358. This court therefore concludes that the county can refuse to post signals and signs for an unreasonable ordinance, but cannot make such refusal for a properly enacted, reasonable ordinance."

The case then proceeded to trial on the issue of the ordinance's reasonableness. In an opinion dated November 19, 1980, the trial court held that defendant BCRC had failed to sustain its burden of proof to overcome the presumption of validity attaching to enactments of local legislative bodies. Relying upon Michigan cases, the trial court found the ordinance reasonable. Both decisions are appealed by right.

I. *Does a township have the legal authority to enact a truck route ordinance without the consent of the board of county road commissioners?*

In the trial court proceedings, plaintiff took the position that it could enact a truck route ordinance independently of BCRC and under no circumstances could the BCRC ever exercise a veto power or refuse to post signs. Conversely, at the trial level, defendant argued that the township could never legally enact such an ordinance without first obtaining defendant's approval. On appeal to this Court, plaintiff no longer disputes a finding that if the ordinance is unreasonable defendant may refuse to post the necessary signs, but defendant continues to contend that because of constitutional and statutory provisions, hereinafter referred to, a township may not enact a truck route ordinance without the prior approval of the BCRC. In effect, defendant argues that it possesses a veto power over a township ordinance regulating truck routes within township boundaries.

Resolution of the legal question raised depends upon construction of several apparently conflicting constitutional and statutory provisions.

A. Const 1963, art 7, § 29, giving counties and townships reasonable control of their streets and highways.

"Except as otherwise provided in this constitution the right of all counties, *townships*, cities and villages *to the reasonable control of their highways, streets, alleys and public places is hereby reserved to such local units of government.*" (Emphasis added.)

B. The exception clause of art 7, § 29 (indicated by the underlining above).

C. Const 1963, art 7, § 16, stating that the Legislature may provide the powers and duties of counties (not townships) regarding highways.

"The legislature may provide the powers and duties of *counties* in relation to highways, bridges, culverts and air-ports; may provide *for county road commissioners* to be appointed or elected, *with powers and duties provided by law.*"(Emphasis added.)

D. The McNitt Act and its successor, MCL 247.2; MSA 9.142. As originally enacted, this act read:

"On or before April first, nineteen hundred thirty-two, the board of county road commissioners in each of the several counties of the state shall take over and incorporate into the county road system, twenty per cent of the total township highway mileage so determined and fixed by the state highway commissioner in each township of their respective counties. Thereafter each such board of county road commissioners shall, on April first of each succeeding year, take over and incorporate into their county road system, an additional twenty per cent of such township highway mileage until the entire township highway mileage in all of the townships of each of such counties has been taken over and made a part of the county highway systems. In the year next following the taking over of all such highways all dedicated streets and alleys in recorded plats and outside of incorporated cities and villages shall be taken over and become county roads." 1931 PA 130, § 2.

E. Various statutes enacted or re-enacted since the McNitt Act giving townships powers over streets and highways: (1) MCL 41.181; MSA 5.45(1), giving a township the power to enact ordinances dealing with vehicular traffic; (2) MCL 257.606(1)(h); MSA 9.2306(1)(h), giving the township the power to regulate "streets or highways under the jurisdiction of the local authority * * * as provided in MCL 257.726; MSA 9.2426" which grants power to "local authorities and county road commissions * * * [to] prohibit the operation of trucks or other commercial vehicles" within their jurisdiction; (3) MCL 257.951; MSA

9.2651, allowing a township to adopt by reference the Michigan Vehicle Code.

F. Section 609 of the Michigan Vehicle Code, MCL 257.609(b); MSA 9.2309(b), requiring county road commission consent to placing any traffic control device without the approval of the county road commission.

Plaintiff argues that the language italicized in A, plus the several statutes referred to in E, above, enable it to adopt an ordinance reasonably regulating truck routes sans the consent of defendant. Defendant contends that the exception clause in A, plus the language in C together with the McNitt Act and its successor act, and the statutory authority in F, above, preclude the township from adopting a truck control ordinance without first obtaining the approval of the board of county road commissioners. In addition, defendant argues that, on grounds of public policy of preventing a chaotic patchwork of conflicting township regulations, authority to establish truck routes falls exclusively to the county road commission.

Though the issue is admittedly close and of first impression, we find the better reasoning supports the decision of the trial court. Basically, defendant's argument rests on a literal reading of the McNitt Act and its successor. Read literally, there would be no township roads and, consequently, no authority in the township to control roads within township boundaries. Yet such an interpretation makes useless art 7, § 29, providing that townships are to have reasonable control over their streets. Certainly, the delegates to the Constitutional Convention of 1963 would not have included the word "townships" in the last sentence of § 29, if, as claimed by defendant, jurisdiction had been lost under the McNitt Act in 1931.

Furthermore, there would be no reason for the Legislature to give townships statutory powers over

streets and highways, as set forth in E above, had not the Legislature intended that, at least for some purposes, jurisdiction over its streets and roads remained with the township. This was the finding of the Supreme Court in *Union Twp v Mt Pleasant,* 381 Mich 82; 158 NW2d 905 (1968). There, the city wished to construct a water pipeline which would run through Union Township. Permission to run the pipeline had been obtained from the Isabella County Road Commission but not from the township. The Court, in ruling that the township's permission must be obtained, rejected the argument that there were no longer any township roads because of the McNitt Act.

"The city's contention is that, since implementation of the McNitt act, there no longer are any township roads as such, all township roads having been taken over by county road commissions and, therefore, that article 7, § 29 grants no power to the plaintiff township to approve or disapprove of defendant's pipeline construction wholly within the right-of-way of a road which is a county road and not any part of 'the highways, streets, alleys or other public places of [the] * * * township.'

"The township's contention, on the other hand, is that the McNitt act provided for the transfer from the townships to county road commissions of responsibility for laying out, construction, improvement and maintenance of township roads, but in all other respects, it is claimed, the roads remain subject to control by the township—for example, for regulation of their use by public utilities and by others for the conduct of businesses. The township reads article 7, § 29 as a reservation of such regulatory power to the townships in all such matters except as otherwise provided by the Constitution itself. Thus, the township argues that while its roads may now be county roads for some purposes, they still are township roads for other purposes including that of article 7, § 29's requirement of the township's consent, as well as the county's, when any public utility seeks to use such roads for its facilities.

"It is our judgment that the township's interpretation of

the Constitution is correct and that the legislature had so provided by §§ 13 and 14 of PA 1925, No 368, even before adoption of our current Constitution." *Union Twp, supra,* 86-87. (Footnotes omitted.)

Although *Union Twp* involved a question concerning the laying out of utility lines, as distinguished from the designation of truck routes, and to this extent is distinguishable from the instant case, the central objection that the McNitt Act divested the township of *all* control over its streets is the same in both cases.[1] We agree with *Union Twp* that the McNitt Act transferred to the county road commission the "responsibility for laying out, construction, improvement, and maintenance of township roads", but in other respects, such as weight limits, designation of truck routes and related traffic control matters, control remains with the township. Our conclusion in this respect is supported by Attorney General's Opinion No. 5307 issued May 18, 1978.[2]

"Considering these authorities, it is my opinion that, subject to the limitations noted herein, Const 1963, art 7, § 29 when read together with Const 1963, art 5, § 28 guarantees to local units of government the right to reasonable control over highways and streets, including state trunkline highways, within their municipal boundaries. Local units of government are, therefore, free to enact ordinances restricting commercial vehicles, such as double tandem tankers, to certain routes; they may also impose weight limitations thereon and require that certain types of cargoes be covered." *Id.,* 450.

Nor can we agree with defendant that § 609(b) of

---

[1] *Union Twp* involved an interpretation of art 8, § 28 of the Constitution of 1908. With some minor changes in wording that section is now art 7, § 29 of the Constitution of 1963. The principal change is the addition of the words "[e]xcept as otherwise provided in this constitution" at the beginning of the second sentence in art 7, § 29.

[2] OAG 1977-1978, p 448.

the Michigan Vehicle Code, MCL 257.609(b); MSA 9.2309(b),[3] precludes a township from designating truck routes. We grant that, as a practical matter, signing is required. However, as a legal matter, the county road commission may not unreasonably withhold its permission. Where, as here, the consent of two units of government is required, neither unit may refuse arbitrarily or unreasonably. As was stated in *Union Twp, supra,* 90,

"[t]hat on occasion there may be conflict between the county and township when the consent of both is sought, we do not doubt. However, *consent of neither can be refused arbitrarily and unreasonably* and we are not inclined to believe that such refusal need be anticipated." (Emphasis supplied.)

Further, by the use of the word "shall", § 610 of the Michigan Vehicle Code, the section immediately following § 609, *supra,* places an affirmative duty on county road commissions to place and maintain traffic control devices "necessary" to carry out the provisions of local ordinances.

In arriving at our decision that a township may regulate truck traffic within the township's boundaries without the prior consent of the county road commission, we are not unmindful that, upon grounds of public policy, consent of the county road commission would be advisable. We agree that if several townships each designate noncontiguous routes a "chaotic patchwork" will ensue. But this claim goes to the reasonableness of the ordinance rather than to the jurisdictional right to enact the ordinance. The trial court itself took cognizance of this claim when it stated that

[3] "(b) No local authority shall place or maintain any traffic-control device upon any truck line highway under the jurisdiction of the state highway commissioner except by the latter's permission or upon any county road without the permission of the county road commission having jurisdiction thereof."

"if incompatible ordinances were adopted by surrounding townships, the truck route adopted by Robinson Township could become unreasonable".

Further, nothing in the transcript indicates that any other township contemplated adopting a truck route ordinance. Robinson Township's supervisor testified that if an abutting township should consider enacting such an ordinance, plaintiff township would cooperate to design one and that, before adopting the ordinance in dispute, Robinson Township invited adjoining townships to participate in the selection of a uniform route. Hence, we are not persuaded that on the facts in this case "chaos" will result. As the trial judge so aptly observed, the court must deal with the facts as they exist and not speculate on what the facts might become.

Accordingly, we find that Robinson Township had the legal authority to enact the ordinance in question without the consent of the board of county road commissioners and further find that defendant may not refuse to post signs required to make the ordinance work effectively, unless the ordinance is unreasonable.

II. *Did the trial court err in finding the truck route ordinance reasonable?*

A party challenging an ordinance regulating truck routes has the burden of showing that the ordinance is unreasonable. *Fenton Gravel Co, Inc v Village of Fenton,* 371 Mich 358, 366; 123 NW2d 763 (1963). See generally 7 McQuillin, Municipal Corporations (3d ed), § 24.616, p 668, 3 Callaghan's Michigan Pleading & Practice (2d ed), § 36.178, p 653. In the trial court's opinion, defendant failed to establish that the ordinance was unreasonable. Legislation must bear a reasonable relation to a permissible legislative objective. *O'Brien v Hazelet & Erdal,* 410 Mich 1, 13-14; 299 NW2d 336 (1980). It is clear that plaintiff has the

power to enact a truck route ordinance, a permissible legislative objective. *Fenton Gravel Co, Inc, supra.*

The primary industry of Robinson Township is production of sand and gravel in the northeast corner of the township. Until 1976, most of the sand and gravel mined therein was shipped by barge on the Grand River which flows along the northern border of the township. Commencing in 1976, barge traffic ceased and sand and gravel was transported out of the township by double-bottom trucks primarily using the Cedar/Green connector which runs westerly along the northerly portion of the township, crossing the Stearns Bayou bridge and connecting with 144th Avenue on the west border of the township. In response to citizen complaints in the Stearns Bayou area concerning noise, dust, and danger to school children, Robinson Township enacted the proposed ordinance which precluded trucks from using the Cedar/Green connector. Instead, truck traffic was diverted south along 104th Avenue to its intersection with M-45, thence west on M-45 to 144th Avenue, thence northerly out of the township, or alternately, westerly on M-45 to its intersection with US-31. As noted by the trial court, requiring trucks to follow the proposed route adds approximately 12 miles per round trip, or 6 miles one way.

Defendant contends that the ordinance is unreasonable because: (1) It requires defendant's single-bottom trucks to travel an additional 75,000 miles a year at a cost in terms of labor and truck costs of $42,-770 a year plus $25,000 gallons of fuel;[4] (2) While eliminating truck traffic from one residential area of the

---

[4] Increased costs to the private haulers would be even higher. In 1978, 90% of the total tonnage of 836,000 tons moved out of the township over the Cedar/Green connector. The additional annual cost to Verplank's Coal & Dock Co., a principal hauler for Construction Aggregates, is estimated to be $199,000 from the Bass River pit and $424,000 from the Clark Farm pit. Defendant claims these costs will be passed on to the consumer.

township, it diverts it through two other residential areas; (3) Cedar/Green connector, constructionwise, is capable of carrying trucks and is wider and safer than parts of the other designated roads; (4) The trial court relied excessively on the testimony of plaintiff's sole expert witness whose qualifications and opinions are suspect; (5) The failure to include pickup trucks and vans within the ordinance constitutes discriminatory class legislation; (6) 144th and 96th Avenues possessed potential for a patchwork quilt system.

We have carefully reviewed the excellent and comprehensive briefs of the parties, have examined the testimony at trial, and have studied the several maps and exhibits. Having done so, we are not persuaded that the ordinance was not a reasonable response to local and peculiar concerns in the township. *People v McGraw,* 184 Mich 233, 238; 150 NW 836 (1915), *Fenton Gravel Co, supra,* 366.

Increased truck hauling costs of 28 cents per ton caused by adding 5.7 miles to the normal traveled route did not make the ordinance unreasonable in *Fenton Gravel,* 360. Furthermore, cross-examination exposed deficiencies in the methodology used by defendant in preparing such cost comparisons. The primary recreational areas in the township lie on the east end of Cedar Drive and at the Stearns Bayou. Diverting truck traffic southward and westward had the advantage of eliminating such traffic from one residential area as well as two recreational areas. Though Cedar/Green was well paved and capable of carrying trucks, we find no requirement that a proposed route include every road capable of carrying trucks. Furthermore, the new route utilized M-45, a state highway much more adapted to carrying heavy vehicle traffic than Cedar/Green.

Though there were deficiencies in the testimony of Dr. Cleveland, plaintiff's expert witness, there were

equal deficiencies in the testimony of Dr. Koert, defendant's principal expert witness. At one point, Dr. Koert conceded that reasonable men might reasonably come to different conclusions as to proposed truck routes. The trial judge, who had the advantage of observing the witnesses, is in a better position to give the testimony of one more weight than the other. The ordinance's classification which excludes vans and pickup trucks is not discriminatory. Neither in size nor number, nor in the quantity of noise and dust created, did such vehicles constitute a local problem. Therefore, their exclusion recognized reality and had a reasonable basis. *O'Brien v Hazelet & Erdal, supra,* 18, fn 23. Defendant's claim that the proposed route has the *potential* for a patchwork quilt system was answered earlier in this opinion. As we then stated, the court must deal with facts as they exist rather than on what they might become. No testimony was presented that any adjoining township was contemplating a truck route ordinance.

In short, we are not persuaded that the defendant has carried the burden of showing that the challenged ordinance is unreasonable. To the contrary, we find it to be a reasonable response to a local and peculiar condition.

Affirmed. No costs, a question of public importance being involved.