**Lansing, Michigan**

# Opinion

Chief Justice:      Justices:

Marilyn Kelly      Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis

FILED DECEMBER 29, 2010

S T A T E   O F   M I C H I G A N

SUPREME COURT

2000 BAUM FAMILY TRUST, BAUM
FAMILY TRUST, JOSEPH BEAUDOIN,
SANDRA BEAUDOIN, ADELE
MEGDALL REVOCABLE TRUST, PAUL
NOWAK & JOAN NOWAK TRUST,
MARILYN ORMSBEE, MARK
SCHWARTZ, WENDY SCHWARTZ, and
THOMAS THOMASON,

    Plaintiffs/Counterdefendants-
    Appellants,

v

WILLIAM BABEL, JUDY BABEL,
JAMES CAHILL, GLORIA CAHILL,
DANIEL ENGSTROM, PENNY
ENGSTROM, ARTHUR A RANGER
TRUST, PATRICIA L RANGER TRUST,
and CHARLEVOIX COUNTY ROAD
COMMISSION,

    Defendants/Counterplaintiffs-
    Appellees,

and

AL GOOCH, ELIZABETH GOOCH, JESSE
HALSTEAD, and LINDA HALSTEAD,

No. 139617

Intervening Defendants/
Counterplaintiffs-Appellees,

and

CHARLEVOIX TOWNSHIP,

Defendant-Appellee.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This case involves riparian rights.[1]  Specifically, the parties ask us to decide an issue that was treated as unsettled by the lower courts: who possesses riparian rights to a portion of a lake, persons who are owners of property fronting the lake but separated from the water by a public road or a county road commission that has accepted a statutory dedication of the road and maintains it as such?  The trial court ruled that the property owners (plaintiffs) did not possess riparian rights, and the Court of Appeals affirmed, further holding that the road commission (defendant) was in "no way" limited in the type of use it could make of the public road.  *2000 Baum Family Trust v Babel*, 284 Mich App 544, 561; 773 NW2d 44 (2009).  We reverse.

The road at issue, along Lake Charlevoix, was dedicated under the 1887 plat act.  Many lots alongside Michigan's some 11,000 inland lakes were platted during this period and are separated from the water by a public road running parallel to the shoreline.  The

---

[1] As others have done, we observe that "[s]trictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral."  *Thies v Howland*, 424 Mich 282, 288 n 2; 380 NW2d 463 (1985).  However, "the term 'riparian' is often used to describe both types of land," *id.*, and will be used in such a manner in this opinion.

2

term of art that Michigan courts have long used to describe the property interest in dispute is a statutory "base fee." *Patrick v Young Men's Christian Ass'n of Kalamazoo,* 120 Mich 185, 191; 79 NW 208 (1899). Decisions of this Court dating back well over a century illuminate the nature of this property interest and the corresponding rights the county receives through a statutory dedication. *Bay Co v Bradley*, 39 Mich 163, 166 (1878) (stating that the county "acquire[d] no beneficial ownership of the land"); *Wayne Co v Miller*, 31 Mich 447, 448-449 (1875) (stating that the county did not receive "title in the nature of a private ownership"); *Backus v Detroit*, 49 Mich 110, 115; 13 NW 380 (1882) (stating that the county did not receive "the usual rights of a proprietor," but took title to the extent that it could "preclude questions which might arise respecting the public uses, other than those of mere passage"). Consistent with these holdings, the Court of Appeals has held that a statutory base fee does not divest front-lot[2] property owners of their riparian rights. *Mich Central Park Ass'n v Roscommon Co Rd Comm*, 2 Mich App 192; 139 NW2d 333 (1966); *Sheridan Drive Ass'n v Woodland Backproperty Owners Ass'n*, 29 Mich App 64; 185 NW2d 107 (1970); *Kempf v Ellixson*, 69 Mich App 339; 244 NW2d 476 (1976); *McCardel v Smolen*, 71 Mich App 560; 250 NW2d 496 (1976), vacated in part on other grounds in 404 Mich 89 (1978).

On the authority of this caselaw, and mindful that the imperatives of stare decisis are particularly strong in the area of property law, we hold that plaintiffs in this case have riparian rights, as similarly situated persons have always had in Michigan.

---

[2] "Front-lot" properties are in the first row of lots on the landward side of the disputed road. "Back-lot" properties are one or more rows further removed from the road and the lake.

3

## I. FACTS AND HISTORY

Plaintiffs own front lots in a platted subdivision on the northern shore of Lake Charlevoix. Their lots do not touch the shoreline. Rather, Beach Drive, which runs east to west and parallel to the lake, abuts the shoreline and separates plaintiffs' lots from the lake. In other words, plaintiffs' lots extend to the edge of the road, not to the water's edge. In addition to the Charlevoix County Road Commission (CCRC), defendants include back-lot owners and Charlevoix Township.

The plat includes six named streets, including Beach Drive. All these streets run parallel to the lake, except for Central Avenue, which cuts through the center of the plat and runs perpendicular to, and terminates at, the lake. The plat depicts a single dock extending into the lake at the end of Central Avenue, but there is no indication in the record whether this dock was ever built, or, if it did exist, how it was used.

The Charlevoix County Board of Supervisors accepted the plat and the dedication of the streets on August 7, 1911.[3] Concerning the roadways in the plat, the dedication includes the following language: "[T]he streets and alleys as shown on said plat are hereby dedicated to the use of the public." It is undisputed that the public has continued

---

[3] The record does not contain information about the identity of the original plat proprietor. The minutes of the August 7, 1911, meeting at which the plat was accepted state that "Mr. D. C. Littleton presented the plat of North Charlevoix," although the plat itself indicates that its proprietor was "D. C. Nettleton." However, as we will discuss, the plat proprietor's identity is not material. All that is necessary to know for the purposes of this case is that the original plat proprietor completely parted with his interest in the land by conveying the lots without reserve. See *Turner v Holland*, 65 Mich 453, 463; 33 NW 283 (1887) ("[I]f there was no reservation, riparian rights would attach to lots bounded by navigable waters or natural water-courses.").

since that time to accept the dedication of the roadways, including Beach Drive. Today, the CCRC maintains Beach Drive, which is now paved.[4]

From the time it accepted the dedication in 1911 until the instant lawsuit, the CCRC had never asserted a claim to riparian rights as a necessary incident to its interest in Beach Drive. The CCRC has never installed a dock along the lakeshore or otherwise engaged in riparian activities. Over the years, however, plaintiffs have used the lake in front of their lots and have built seasonal docks extending into the lake in order to moor boats and other water-related equipment. Furthermore, it is undisputed that there is neither a reservation nor a grant of riparian rights in plaintiffs' deeds and that their lots are taxed as "water view" properties rather than "waterfront" properties.

Allegedly, various back-lot owners began using the waterfront in front of plaintiffs' homes to maintain docks and store boats. In response, plaintiffs filed a complaint against defendants alleging claims of trespass and nuisance and seeking injunctive and equitable relief. The CCRC counterclaimed, alleging that plaintiffs had trespassed on Beach Drive by maintaining encroachments on the drive, including docks. The individually named back-lot defendants also counterclaimed, asserting claims of

---

[4] The CCRC did not exist at the time of the dedication. 1931 PA 130 transferred to the county road commissions the responsibility for the laying out and construction, improvement, and maintenance of township roads. *Robinson Twp v Ottawa Co Bd of Co Rd Comm'rs*, 114 Mich App 405, 410; 319 NW2d 589 (1982). As with all county road commissions, the CCRC is a statutorily created entity charged with the duty to construct and improve roads. MCL 224.19. As this Court has made clear, it is "only a governmental agency in the hands of the State highway commissioner used in the discharge of certain governmental duties, *i. e.* the repair and maintenance of State highways." *Johnson v Ontonagon Co Bd of Rd Comm'rs*, 253 Mich 465, 470; 235 NW 221 (1931).

adverse possession or, alternatively, seeking a declaration that they possess easements, either by acquiescence or by prescription.

Plaintiffs moved for partial summary disposition against the CCRC alone, claiming that there is no issue of material fact regarding which party is entitled to riparian rights. Plaintiffs argued that because their lots were separated from the water by a roadway parallel to the water, their lots were riparian. In plaintiffs' view, the CCRC has a right to the use of Beach Drive as a roadway only. In response, the CCRC argued that plaintiffs did not possess riparian rights because the public holds Beach Drive in fee pursuant to the statutory dedication under the plat act, which means that plaintiffs' lots are not riparian. The back-lot defendants also filed a motion in response, arguing that plaintiffs did not possess riparian rights because, as shown on the plat, none of their properties abuts the lake.

The trial court denied plaintiffs' motion, ruling that they did not possess riparian rights. The court framed the issue as "whether Beach Drive is an easement with the fee title residing in the front lot owners or whether the public holds fee title." It ruled that the effect of a dedication is to "vest fee title in the local unit of government . . . ." It followed, in the court's view, that because plaintiffs "do not hold fee title to the waterfront land in front of their respective lots, they do not possess riparian rights."

The Court of Appeals granted plaintiffs' interlocutory application for leave to appeal and affirmed. *Baum*, 284 Mich App at 546, 549. That Court applied a "two-tier analysis: First, whether a valid statutory dedication was created under the 1887 plat act and, second, if so, what type of fee interest has been vested in the public." *Id.* at 562. On the first question, the Court concluded that the act was "unambiguous" and that it clearly

6

vested in the public a fee for public uses of the road. *Id*. at 557-559. The second question, the Court reasoned, required discerning the intent of the plat proprietor by examining the dedication.[5] The Court concluded that the "language of the dedication in no way limits what type of use may occur on the depicted streets or alleys or who may use them." *Id*. at 561.

We granted leave to appeal, including among the issues to be argued (1) whether the fee title resulting from the dedication of land for public uses in a plat under the 1887 plat act in land that runs along the shore of a lake conveys the riparian rights to the lake to the county or whether the conveyance is limited to public uses of the road as a road and (2) whether caselaw stating that front-tier lots adjacent to a road running along a waterway have riparian rights, unless such rights are expressly excluded, remains valid. *2000 Baum Family Trust v Babel*, 485 Mich 1051 (2010).

## II. STANDARD OF REVIEW

The question presented on appeal is a question of law: Whether plaintiffs have riparian rights in this context in which their lots abut a roadway that runs parallel to the lakeshore and was dedicated under the 1887 plat act. We review issues of statutory interpretation and other questions of law de novo. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

---

[5] Plat proprietors are also known as "plattors."

7

### III. LAW OF DEDICATION

The lower courts held that the nature of the property interest conveyed to the CCRC in the dedication of Beach Drive under the applicable plat act is such that it divested front-lot plaintiffs of their riparian rights. In addition, the Court of Appeals interpreted the dedication language as granting the CCRC unlimited use of the streets and alleys within the plat. Analysis of these conclusions requires an understanding of several aspects of Michigan property law. Therefore, before turning to the central questions at issue-- (a) what is the nature of the property interest conveyed by the plat act and (b) how does this property interest affect riparian rights-- some general legal background is necessary. In particular, we survey the law of dedication and consider the creation of public roads by dedication and the rights of landowners abutting such roads.

### A. BACKGROUND

A "dedication" of land is an "appropriation of land to some public use, accepted for such use by or in behalf of the public." *Clark v Grand Rapids*, 334 Mich 646, 656-657; 55 NW2d 137 (1952). The essence of a dedication is that the covered land will be for the use of the public at large. See *Patrick*, 120 Mich at 191. From its earliest days, this Court has frequently considered disputes involving the dedication of land to the public. See, e.g., *People v Beaubien*, 2 Doug 256 (Mich, 1846); *Wanzer v Blanchard & Buckland*, 3 Mich 11 (1853); *Lee v Lake*, 14 Mich 12 (1865). These early decisions drew on a well-established body of law that had developed in federal, state, and English courts. See *Beaubien*, 2 Doug at 272-282, noting that the doctrine of dedication had been "of late much considered" and surveying the leading cases of the day, including *City of*

8

*Cincinnati v White's Lessee*, 31 US (6 Pet) 431; 8 L Ed 452 (1832); *Wyman v New York Mayor*, 11 Wend 486 (NY, 1834); *Hobbs v Town of Lowell*, 36 Mass (19 Pick) 405 (1837); and numerous English cases on the subject.

This realm of law was said to be "anomalous," in that "[u]nder it, rights are parted with and acquired in modes and by means unusual and peculiar." *Patrick*, 120 Mich at 193 (citations and quotation marks omitted). First, although ordinarily some conveyance or written instrument is required to transmit a right to real property, a "dedication may be made without writing, by act *in pais* [an act performed outside of legal proceedings], as well as by deed." *Id*. (citation and quotation marks omitted). In other words, the statute of frauds is not applicable to the dedication of land to the public. See *Baker v Johnston*, 21 Mich 319, 348 (1870). Second, like a charitable trust, there need be no grantee in being at the time of the dedication to give it effect. *Patrick*, 120 Mich at 190. Third, and most significant to the instant case,

> [i]t is not at all necessary that the owner should part with the title which he has, for dedication has respect to the possession, and not the permanent estate. Its effect is not to deprive a party of title to his land, but to estop him, while the dedication continues in force, from asserting that right of exclusive possession and enjoyment which the owner of property ordinarily has. [*Id*. at 193 (citation and quotation marks omitted).]

The enforcement of dedications was left to the law of estoppel. See *White's Lessee*, 31 US at 438 (holding that the original owner was estopped from revoking a dedication). But see *Lee*, 14 Mich at 17 (holding that "[n]o estoppel . . . could spring" unless the "circumstances in the case . . . make it inequitable" for the owner to revoke the dedication). This Court in *Patrick*, 120 Mich at 193, gave this straightforward explanation of the "principle upon which the estoppel rests":

9

[I]t would be dishonest, immoral, or indecent, and in some instances even sacrilegious, to reclaim at pleasure property which has been solemnly devoted to the use of the public, or in furtherance of some charitable or pious object. The law therefore will not permit any one thus to break his own plighted faith; to disappoint honest expectations thus excited, and upon which reliance has been placed. The principle is one of sound morals and of most obvious equity, and is in the strictest sense a part of the law of the land. It is known in all courts, and may as well be enforced at law as in equity. [Citation and quotation marks omitted.]

The law will give effect to a dedication of land that has been "solemnly devoted to the use of the public" for as long as the land continues to be exercised in accordance with its dedicated public use. *Id.* (citation and quotation marks omitted); see also *White's Lessee*, 31 US at 438.[6]

In sum, the rules of property governing dedications of land to the public are distinct, yet deeply rooted in the Anglo-American legal tradition. These rules have developed to accommodate the coexisting rights of the dedicator of land, his or her grantees, and the public. In balancing these rights, the use to which the dedication was made has always been at the fore. See *White's Lessee*, 31 US at 438 ("All public dedications must be considered with reference to the use for which they are made[.]"). We are guided in the instant case by this first principle, and reaffirm the precept that we

---

[6] Quoting the New York case of *Hunter v Village of Sandy Hill Trustees*, 6 Hill 407, 414-415 (NY, 1844), which concerned a dedication of a public graveyard, *Patrick*, 120 Mich at 194, provided this description of how long one is bound by a public dedication:

"When these graves shall have worn away, when they who now weep over them shall have found kindred resting places for themselves, when nothing shall remain to distinguish this spot from the common earth around, and it shall be wholly unknown as a graveyard, it may be that someone who can establish a good 'paper title' will have a right to its possession, for it will then have lost its identity as a burial ground, and with that all right founded on the dedication must necessarily become extinct."

articulated well over a century ago in resolving a dedication dispute: "This being a case to which the law of dedication applies, the use for which the dedication was made must determine the extent of the right parted with by the owner of the land and acquired by the public." *Patrick*, 120 Mich at 193 (citation and quotation marks omitted).

## B. PUBLIC ROADS BY DEDICATION

For a road to become public property, there must be (a) a statutory dedication and an acceptance on behalf of the public, (b) a common-law dedication and acceptance, or (c) a finding of highway by public user. *Village of Grandville v Jenison*, 84 Mich 54, 65-68; 47 NW 600 (1890) (discussing these three modes). Although it is undisputed that the road at issue here was dedicated by statute and accepted on behalf of the public, we will consider aspects of both common law and statutory dedications to gain insight into the similarities and differences between these modes of dedication.

### 1. COMMON-LAW DEDICATION

A valid common-law dedication of land requires (a) intent by the property owner to offer the land for public use, (b) an acceptance by, and maintenance of the road by, public officials, and (c) use by the public generally. *Bain v Fry*, 352 Mich 299, 305; 89 NW2d 485 (1958). If these are present, the dedication is sufficient regardless of form. *Badeaux v Ryerson*, 213 Mich 642, 647; 182 NW 22 (1921).

With regard to an intention to dedicate, all facts and circumstances bearing on the question are considered. See *Lee*, 14 Mich at 18. Acceptance is similarly fact-specific. It "may be either formal, by resolution or ordinance, or informal 'through user or expenditures of public money for the repair, improvement and control of the highway.'" *Rice v Clare Co Rd Comm*, 346 Mich 658, 665; 78 NW2d 651 (1956) (citation omitted).

11

"A dedication must be accepted within a reasonable time or the offer will be considered as withdrawn." *Cass Co Bd of Supervisors v Banks*, 44 Mich 467, 476; 7 NW 49 (1880). Offers to dedicate are considered withdrawn when the owners of property use it in a way that is inconsistent with public ownership. *Lee*, 14 Mich at 18. What qualifies as an inconsistent use depends on the circumstances of each case. See *Field v Village of Manchester*, 32 Mich 279, 280 (1875), in which the Court considered the fact that the landowner had erected buildings, fenced in an enclosure, and planted fruit trees in a portion of a disputed street as evidence of use inconsistent with dedication and public ownership.

"Common-law dedications do not ordinarily convey the fee. In fact, under the strict rule they never do." *Patrick*, 120 Mich at 211. "'By the common law, the fee in the soil remains in the original owner, where a public road is established over it; but the use of the road is in the public. The owner parts with this use only.'" *People, ex rel Dep't of Conservation Dir v LaDuc*, 329 Mich 716, 719; 46 NW2d 442 (1951), quoting *Barclay v Howell's Lessee*, 31 US (6 Pet) 498, 513; 8 L Ed 477 (1832). Accordingly, as this Court stated in *Loud v Brooks*, 241 Mich 452,456; 217 NW 34 (1928):

> We hold the correct rule to be that a conveyance of land bounded on a highway, street, or alley carries with it the fee to the center thereof, subject to the easement of public way, provided the grantor at the time of conveyance owned to the center and there are no words in the deed showing a contrary intent . . . .

## 2. STATUTORY DEDICATION

To create a public road by statutory dedication, two elements are required: (a) "a recorded plat designating the areas for public use, evidencing a clear intent by the plat

proprietor to dedicate those areas to public use, and [b] acceptance by the proper public authority." *Kraus v Dep't of Commerce*, 451 Mich 420, 424; 547 NW2d 870 (1996). While this Court has stated that the "acknowledgment and recording of the plat had all the force and effect of an express grant," *Kirchen v Remenga*, 291 Mich 94, 109; 288 NW 344 (1939), public acceptance is always required, *Miller*, 31 Mich at 448-449. In *Miller*, Justice COOLEY explained why public acceptance is necessary regardless of whether a recorded plat is considered a grant or offer to dedicate:

> Without venturing to express any definite opinion whether such a plat should be regarded as a grant or as a mere offer to dedicate, it is very clear to our minds that it is one or the other, or perhaps partakes of the nature of both, and that some action by competent public authority is essential before it can have the intended effect. If the plat is only an offer to dedicate, the offer must be accepted or it may be withdrawn, and after any considerable lapse of time must be regarded as no longer open for acceptance, unless the circumstances are such as to make the offer continuous. On this subject our own decisions have been full and explicit.

> But if the plat is regarded as a grant, it is equally necessary that there should be acceptance. No one can thrust a grant upon another without his assent. It is true, acceptance of a grant may be presumed when it is beneficial, but there can be no conclusive presumption that a grant of land for a public way is so. [*Id*. at 449-450 (citations omitted).]

Under any other rule, duties and financial responsibilities would be imposed on the government for dedicated roads that it never knowingly or intentionally accepted. Equally undesirably, land would become waste property, owned or developed by no one. These concerns were addressed in *Miller*, 31 Mich at 449:

> As the execution and recording of the plat is wholly a private matter, subject to no public supervision whatever, this view would enable proprietors of lands to lay out so many streets and avenues as they might see fit, and wherever their private interests should determine; and whether the streets were desired by the public or not, the private ownership would

13

be displaced. Either one of two consequences must then follow: the public must be under some obligations to treat the land as constituting a street, and be subject to such liabilities as that fact would impose, or the land must remain waste property, in the hands of an owner who cannot use it for the purposes of profit, and who at the same time refuses to put it to the purposes contemplated in making the plat.

For this reason, a statutory dedication requires the same acceptance by the public as a dedication at common law.

As in a common-law dedication, before acceptance, an offer to dedicate may be withdrawn formally,[7] or informally by using "the property in a way that is inconsistent with public ownership."[8] If a platted roadway is never accepted, the public acquires no rights in the roadway, and "the owners of the lands fronting thereon, may again take possession of the property, and treat it as though, in all respects, no offer of dedication had ever been made." *Field*, 32 Mich at 281.

This overview of common-law and statutory dedications illuminates the principal similarities and differences between these modes of dedication. To create a public road at common law or by statute, there must be a clear intent on the part of the owner to dedicate, along with an acceptance by the public within a reasonable time. By either

---

[7] An offer may be formally withdrawn by vacating the plat, *Gregory v Ann Arbor*, 127 Mich 454, 458; 86 NW 1013 (1901), or by formal resolution of a governmental body vacating the street, *Plumer v Johnston*, 63 Mich 165, 172; 29 NW 687 (1886), overruled on other grounds by *Loud*, 241 Mich at 456. See MCL 560.255b for the requirements for withdrawals by plat proprietors in a statutory dedication under the current platting statute, the Land Division Act (LDA), MCL 560.101 *et seq*.

[8] *Kraus*, 451 Mich at 431, citing *Lee*, 14 Mich at 18. Now, under the LDA, lands dedicated to public purposes in recorded subdivision plats are presumed by statute to be accepted, absent timely and proper withdrawal by the plat proprietor within 10 years after the plat is first recorded. MCL 560.255b; *Kraus*, 451 Mich at 426 n 2.

mode, "the question of dedication is one largely of intention . . . ." *Weihe v Macatawa Resort Co*, 198 Mich 334, 341; 164 NW 510 (1917). The difference is how the requisite intent-- the *animus dedicandi* (the intent to dedicate)[9]-- is made manifest. In a statutory dedication, "the intent of the owner is clear, and has been formally manifested in the plat recorded." *Rice*, 346 Mich at 664. By contrast, in a common-law dedication, the intent of the owner is implied from "all such acts connected with, or relating to the premises, tending to show the design and object of the dedication which is alleged . . . ." *Beaubien*, 2 Doug at 276. In this way, the intent to dedicate in a statutory dedication is easier to prove and the dedicator is estopped from denying the dedication by virtue of the requirement that the plat be recorded. Simply put, the landowner either did or did not properly record a plat and, if the former, is bound by this act. A clear and prescribed method of evidencing intent is especially important in this area of the law, because other aspects of public dedication-- namely, public acceptance and questions of withdrawal-- are highly fact-specific.[10]

---

[9] See *Beaubien*, 2 Doug at 276.

[10] See *Alton v Meeuwenberg*, 108 Mich 629, 634-636; 66 NW 571 (1896), in which the Court included an illustrative excerpt of the fact-intensive jury instructions required to determine the intent of the parties with respect to a putative highway:

> "How did [the putative dedicator] act, at the time and afterwards? What use did he make of the lands, as showing an intent upon his part of dedicating the land? How was the land treated by the public authorities, with reference to its being a highway? Did they open a highway all along the line? Or what portion of it did they open? . . . These are questions for you to determine, from the evidence in the case; and, unless you believe, from the evidence, that they did, then that certain portion never became a public highway."

15

## C. RIGHTS OF ABUTTING LANDOWNERS

The owner of property abutting upon a street "sustains a threefold relation to the street":

> 1. As one of the general public.
>
> 2. As owner of the reversionary interest to the center of the street.
>
> 3. As owner of a lot, possessed of the right of ingress and egress to and from the street. [*Detroit City R Co v Mills*, 85 Mich 634, 653; 48 NW 1007 (1891) (opinion by GRANT, J.).]

First, the abutting landowner "has the right, in common with every other member of the public, to the use of the street." *Id.* As *Mills* stated in this respect, "[f]ree passage is all the law gives him." *Id.* "A highway is a public passage for all," *Beaubien*, 2 Doug at 285, and thus every person-- including the abutting landowner-- is entitled to use public ways for travel.

However, in addition to right of public travel, other public uses may be implied from the dedication of land as a public way. For instance, in *Mills*, this Court considered whether the city of Detroit could authorize the construction of a new system of electric street cars on a city street. A plurality concluded that this use was implied by the dedication and did not impose a new burden on the abutting landowners. *Id.* at 654. "It may now be considered the well-settled rule that the streets of a city may be used for any purpose which is a necessary public one, and the abutting owner will not be entitled to a new compensation, in the absence of a statute giving it." *Id.* This "extension of the public rights in the streets" includes uses necessitated by "increased needs for heating,

16

lighting, draining, sewerage, water, etc. . . . ." *Id*. at 653. The rationale for this rule is that

> [t]he dedication of land . . . must be understood as made and accepted with the expectation that it may be required for other public purposes than those of passage and travel merely, and that under the direction and control of the public authorities it is subject to be appropriated to all the uses to which village and city streets are usually devoted, as the wants or convenience of the people may render necessary or important[.] [*Warren v Grand Haven*, 30 Mich 24, 28 (1874) (holding that the municipality had the right to construct sewer lines beneath land dedicated for a public road).]

As this makes plain, the extension of public rights in the streets set forth in *Mills* has not been thought to be contrary in any way to the central principle of dedication, i.e., that the use of land dedicated to the public depends on the dedicator's intention and may not be appropriated to an entirely different use. See *White's Lessee*, 31 US at 438; *Weihe*, 198 Mich at 341. Rather, the rule in *Mills* is grounded on the premise that, in dedicating a street, the dedicator's intention was to appropriate the land to all uses to which public streets are usually devoted, including all uses incidental to public travel.

*Mills* respects the municipality's "exclusive control" over a roadway in accordance with the use to which it was dedicated. *In re O'Brien*, 119 Mich 540, 541; 79 NW 1070 (1899). However, this Court's precedent also recognizes that

> "if a dedication is made for a specific or defined purpose, neither the legislature, a municipality or its successor, nor the general public has any power to use the property for any other purpose than the one designated, whether such use be public or private, and whether the dedication is a common-law or a statutory dedication[.]" [*Baldwin Manor, Inc v City of Birmingham*, 341 Mich 423, 430-431; 67 NW2d 812 (1954) (citation omitted).]

17

Following this fundamental proposition, this Court held in *Baldwin Manor* that the city was prohibited from putting a road across land dedicated for use as a park because that use was inconsistent with the purpose of the dedication. *Id*. at 434. Similarly, in *Village of Kalkaska v Shell Oil Co (After Remand)*, 433 Mich 348, 358; 446 NW2d 91 (1989), we held that the village's property interest in streets dedicated under the 1887 plat act did not include mineral rights because those rights were not necessary to the use and purpose for which the street was dedicated. Our caselaw is clear that a public entity's use of land dedicated to the public is limited to the purpose of the dedication. And in the case of a public road, "[w]hether the fee is nominally in county, city, or private owners, the public control is only in trust to secure to the public those rights of a public nature that exist in public ways of that kind." *Detroit v Detroit City R Co*, 76 Mich 421, 425; 43 NW 447 (1889).

Second, the abutting landowner possesses a reversionary interest to the center of the street. "It is elementary that upon the vacation of a street or alley the land reverts to the abutting owner or owners." *Mich Central R Co v Miller*, 172 Mich 201, 208; 137 NW 555 (1912). This rule applies to common-law and statutory dedications alike. As we have explained: "We see no reason to distinguish between the two types of dedication for the purposes of the law of abandonment. It is clear that the need for certainty of title exists equally in both instances." *Clark*, 334 Mich at 657. In a common-law dedication, unencumbered title to the property is restored in the abutting landowners when the street becomes free of the public easement. See 12 Michigan Civil Jurisprudence, Highways & Streets, § 224, p 260 ("Upon a vacation or abandonment of the street by the public, the fee of the abutting owners becomes free of the easement,

18

which is thereby extinguished and terminated."). In a statutory dedication, title "vest[s] in the rightful proprietors of the lots, within the subdivision covered by the plat, abutting the street or alley." MCL 560.227a(1).[11] And while there are statutorily defined mechanisms by which a road may be abandoned,[12] as well as particular procedures applicable to roads adjacent to a lake,[13] by either mode of dedication, and without regard to the road's location, title to a street that is vacated or abandoned vests in the owners of the lots abutting the street. MCL 560.227a(1); *Clark*, 334 Mich at 657.

---

[11] MCL 560.227a(1), governing the vesting of title upon vacation of plat, street, or alley, provides:

> Title to any part of the plat vacated by the court's judgment, other than a street or alley, shall vest in the rightful proprietor of that part. Title to a street or alley the full width of which is vacated by the court's judgment shall vest in the rightful proprietors of the lots, within the subdivision covered by the plat, abutting the street or alley. Title to a public highway or portion of a public highway that borders on, is adjacent to, or ends at a lake or the general course of a stream may vest in the state subject to [MCL 560.226].

MCL 560.226(2) specifies particular rules for discontinuing highways adjacent to a lake or stream, specifically requiring the circuit court to determine if vacating the plat "would result in a loss of public access," and, if so, to "allow the state and, if the subdivision is located in a township, the township to decide whether it wants to maintain the property as an ingress and egress point." Accordingly, before a road commission abandons a road bordering a lake or stream, the Department of Natural Resources and Environment and the township in which the road is located may elect to maintain the road. If the township and the department decline to exercise their "priority to obtain the property or control of the property as an ingress and egress point," the property reverts to the abutting landowners. MCL 560.226(2); MCL 560.227a(1); see also MCL 224.18(5) and (8).

[12] Abandonment of a highway is subject to extensive statutory procedures and must be approved by the circuit court in the county where the road is located. See MCL 224.18; MCL 560.222; MCL 560.223; MCL 560.224a.

[13] See MCL 560.226, MCL 247.41, and n 11 of this opinion.

19

This rule appears beyond reproach. In considering a predecessor of the current vacation statute, this Court explained in *Loud*, 241 Mich at 455, that "[t]he vacation statute . . . reveals legislative recognition of the propriety and justice of the rule that gives the owner of a lot bordering on a street or alley, opened or unopened, title to the center." See also *Patrick*, 120 Mich at 198, stating that the "plainest principles of justice require that the original holder's claim should be recognized." Indeed, in *In re Albers' Petition*, 113 Mich 640; 71 NW 1110 (1897), we held that the power of the courts to vacate a city street upon petition of the abutting land owners is not necessarily subject to the acquiescence of the city authorities. *Albers*, 113 Mich at 641, stated:

> Our understanding is that the city has no proprietary interest in the land, all of its authority over it growing out of its legal duty to maintain the public ways, which are placed in its charge. Such interest in the land is in the abutting proprietors ordinarily . . . . [Citation omitted.]

Third, the abutting landowner's relationship to the street includes a right of access to his or her own property. This right is considered a natural easement and one of the incidents of ownership or occupancy of land. See *Kirchen*, 291 Mich at 108, in which we stated:

> The purchasers of lots in the original plat took not only the interest of the grantor in the land described in their respective deeds, but, as an incorporeal hereditament appurtenant to it, took an easement in the streets, parks and public grounds mentioned and designated in the plat as an implied covenant that subsequent purchasers should be entitled to the same rights. [Citation omitted.]

This "right of access" is considered a "private right" that flows from a deed that refers to a plat, and is distinct from the public's rights in the road. See *id.* (explaining that "'[t]he lot owners have a peculiar interest in the street which neither the local nor general public

20

can pretend to claim; a private right in the nature of an incorporeal hereditament'") (citation omitted). And it is well settled that this right of access constitutes a property right that adds value to the land. See *State Hwy Comm v Sandberg*, 383 Mich 144, 149; 174 NW2d 761 (1970) ("That right of access ordinarily attaches to property abutting a public highway and that this constitutes a property right is not disputed . . . and must be accepted as long having been the law in Michigan."); *Kirchen*, 291 Mich at 108 ("The grantors could not recall this easement and covenant any more than they could recall other parts of the consideration. They added materially to the value of every lot purchased.").

In summary, our caselaw has long recognized a landowner's multi-faceted relationship to a public street abutting his property. This Court's decision in *Mills* not only provides insight into the nature of these rights, but also the extent to which Michigan courts have traditionally protected them. *Mills* appears to have been a difficult decision for the Court. The case was argued twice; the lead opinion was signed by only two justices; and the opinion issued over two lengthy and emphatic dissents, an unusual occurrence in an era in which there were relatively few separate opinions. One of the dissenters in *Mills* articulated the rights of the abutting owner slightly differently from the lead opinion, simply stating that an abutting owner "is entitled to every use which is not inconsistent with the public use . . . ." *Mills*, 85 Mich at 661-662 (MCGRATH, J., dissenting). Under either articulation of the landowner's legal rights, however, our precedent is clear that abutting owners "have special interests . . . which courts . . . are bound to respect." *Id.* at 670.

## IV. ANALYSIS

With this legal background of the law of dedication, we may now turn to the central questions in this appeal: the nature of the property interest conveyed by the 1887 plat act, and how that property interest affects riparian rights.

## A. PLAT ACT OF 1887

The North Charlevoix plat was properly recorded, the Charlevoix County Board of Supervisors accepted the dedication of streets in 1911, and the CCRC has continued to maintain the streets. It is undisputed that the elements of a statutory dedication of a public road were satisfied for the road at issue. The dedication is controlled by the plat act in effect at the time the plat was recorded, 1887 PA 309. Section 2 of that act provided, in relevant part:

> The map so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance *to vest the fee* of such parcels of land as may be therein designated for public uses in the city or village within the incorporate limits of which the land platted is included, or if not included within the limits of any incorporated city or village, then in the township within the limits of which it is included *in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever*. [Emphasis added.]

The emphasized language is virtually identical to that of the first plat act of 1839, as well as to that of each successive platting statute until 1967. The 1967 statute, originally titled the Subdivision Control Act and now titled the Land Division Act, refers to the vested

interest as a "fee simple" instead of a "fee," but is substantially similar in all other respects. MCL 560.253(1).[14]

The operative language makes clear that the statute conveys a "fee" that is expressly limited by the terms of the dedication. That is, the fee is held "in trust to and for the uses and purposes *therein designated*, and for *no other use or purpose whatever*." Accordingly, we first observe that the language used in the dedication of the plat is significant, indeed controlling, because no rights vest in the grantee beyond those that are "therein designed," and the land shall be used for "no other use or purpose whatever." Furthermore, we observe that, under this statute, a dedication is not presumed to be broad, requiring express words in the dedication to limit its scope. Rather, in all its versions, the statute has taken the opposite approach. The scope of the dedication is strictly limited to the words expressly conveyed, i.e., the purposes "therein designated" and "no other use or purpose whatever." Finally, we note that the property interest conveyed by the statute is also limited in duration. Because the fee may be used for the purposes therein designated and for no other use or purpose whatever, duration is coterminous with continued use for the designated purpose.

---

[14] It has been suggested that the Legislature's use of "fee simple" to describe the county's interest in the 1967 plat statute, rather than "fee," as it used in all the predecessor statutes, is significant. While this may evidence some intention on the part of the drafters of the Land Division Act to emphasize the nature of the interest, the instant case does not require us to examine the significance of this difference. As discussed later, the language of the pre-1967 plat acts and the caselaw interpreting these statutes afford sufficient guidance.

There is further evidence from the plat act that the property interest conveyed by the statute is a "fee . . . in trust" that is limited in scope and duration. Early decisions of this Court shed light on the original understanding of this interest. In the first case in which we considered the platting statute, *People v Beaubien*, we described its purpose as follows:

> This statute, as is apparent on its face, was designed to provide an explicit mode for the dedication of streets and other grounds designed for public uses, upon the laying out of towns by individual proprietors, and to render the rights of purchasers, and the public generally, in grounds thus dedicated, definite and certain. It also obviated the difficulty met with in some of the cases in the application of common law principles of dedication, in regard to ownership of the fee, by providing that, upon compliance with the provisions of the act, this should vest in the county, in trust for the designed uses. [*Beaubien*, 2 Doug at 270.]

*Beaubien* was cited favorably several years later in *Wanzer*, in which the Court explained how a statutory dedication operates in conjunction with the rule that the government retains its interest only as long as it uses the road as a road. *Wanzer*, 3 Mich at 16, reiterated that the under the statute, the "fee . . . vest[s] in the county, in trust for the designed use" and then stated that when the governmental entity abandons the road, "such discontinuance operate[s] to revest the fee in the original proprietor, or his grantee—in other words, . . . the property revert[s] . . . ."[15]

---

[15] The dissent states that *Wanzer* "clearly concluded that a statutory dedication conveyed real, ordinary fee title." We respectfully believe that the dissent misreads *Wanzer*. The words "real, ordinary fee title" appear nowhere in that case, or in any other in which this Court has considered the property interest conveyed under a statutory dedication. Furthermore, nothing in *Wanzer*, or in any other case, supports the dissent's reading. Rather, from the start, this Court has interpreted the property interest conveyed by a statutory dedication in a manner consistent with the language of the early platting statutes as conveying a "fee . . . in trust to and for uses and purposes designated . . . ." See

Then, in a series of cases dating from 1875-1899, this Court repeatedly considered the property interest conveyed by the platting statutes and further defined its nature. Arguably the most instructive articulation was by Justice COOLEY in *Miller*, 31 Mich at 448-49, in which he stated:

> It is not very clear what sort of title the act of 1839 designed to vest in the county, whether a fee simple, or only a conditional fee, or possibly a perpetual easement. There are some questions which suggest themselves here which we should be quite indisposed to encounter until it should become absolutely essential. Unquestionably the purpose was to vest in the county such a title as would enable the public authorities to devote the lands to all the public uses contemplated in making the plan, and to charge them with corresponding obligations when the title should vest. It is very clear that no purpose existed to give a title in the nature of a private ownership. This is all we deem it necessary to say on this point in the present case, and further questions must be dealt with when they arise.

Then, in *Bay Co v Bradley*, we explicitly posed a question that is central to the instant case. That is, "what is the position of the county as respects a strip of land dedicated to public use as a street under the statute?" *Bradley*, 39 Mich at 166. In clear and certain terms, the Court answered:

> [The county] acquires no beneficial ownership of the land, and exercises no volition about the transfer. Willing or unwilling, the law vests it with nominal title. It does not accept and cannot refuse. It cannot grant or otherwise dispose of the premises, and has no voice concerning the use. It is powerless to shorten the continuance of the easement, but other agencies may at any time bring it to an end, and in case of that the law does not allow even this figment of ownership to remain. In such event what was in the county vests in others. [*Id*. at 166.]

---

*Wanzer*, 3 Mich at 16; *Beaubien*, 2 Doug at 270. This is a particular and limited fee, not a "real, ordinary fee," if by that term the dissent means a common-law fee.

In another seminal plat act case, *Backus v Detroit*, the Court concluded that the city could build a wharf in the Detroit River at the end of a street dedicated in a plat governed by the platting statute. *Backus*, 49 Mich at 120.[16] Consistent with *Miller* and *Bradley*, *Backus* concluded that "[t]he purpose of the statute is not to give the county the usual rights of a proprietor, but to preclude questions which might arise respecting the public uses, other than those of mere passage . . . ." *Id*. at 115. Significantly, *Backus* declared that it "attach[ed] no special importance to the fact that the title passed instead of a mere easement" because the question of the city's right to construct a wharf did not depend on the nature of its property interest created by the plat act. *Id*. Rather, on the basis of the fundamental principle of the law of dedication, *Backus* concluded that the scope of the dedication controlled, asserting that "the city derives its authority from the dedication of the public way" and may not appropriate the end of the street "to any uses inconsistent with the dedication." *Id.* at 120. *Backus* determined that "the construction of a wharf which shall give the means of access from the highway by land to the highway by water, is not inconsistent with the gift." *Id*.

And finally, in *Patrick v Young Men's Christian Ass'n of Kalamazoo*, the Court once again addressed a dedication under a plat act and settled on this descriptive term of art for the property interest at issue: "A plat conforming to the statute . . . operates as a conveyance of a fee, though probably it is a *base fee*." *Patrick*, 120 Mich at 191

---

[16] As discussed further below, *Backus* is the source of the rule in Michigan that a dedicated road that runs perpendicular to, and terminates at, the water conveys riparian rights to the receiving governmental entity. The rule from *Backus* governing perpendicular roads has always been considered distinct from the rule for roads parallel to the water. See *Thies*, 424 Mich at 295.

(emphasis added). *Patrick* subsequently explained there was "no apparent reason" for requiring the dedicator to completely part with his fee because "if the fee were conveyed, it would be but a *base fee*, determinable on the happening of a collateral event." *Id*. (emphasis added).

Thus, by the turn of the last century, this Court had provided ample direction on the nature of the property interest created by the early plat acts. Through a conveyance by a platting statute, the county does not receive "title in the nature of a private ownership," *Miller*, 31 Mich at 449; it "acquires no beneficial ownership of the land" and "has no voice concerning the use," *Bradley*, 39 Mich at 166; and it does not possess "the usual rights of a proprietor," but rather takes title only to the extent that it could "preclude questions which might arise respecting the public uses, other than those of mere passage . . . ." *Backus*, 49 Mich at 115. Simply put, "the law vests [the governmental entity] with *nominal* title." *Bradley*, 39 Mich at 166; see also *Detroit City R Co*, 76 Mich at 425 (reasoning that "whether the fee is *nominally* in county, city, or private owners, the public control is only in trust to secure to the public those rights of a public nature that exist in public ways of that kind") (emphasis added).

We pause at this word "nominal" to emphasize the obvious, i.e., that the property interest conveyed by these early platting statutes is a fee *in name only*. The nomenclature used to describe this particular property interest in the state of Michigan for over a century has been a "base fee." *Patrick*, 120 Mich at 191; see also *Kirchen*, 291 Mich at 112 (stating that "the term 'base fee' which the court in [*Patrick*] said was probably meant by the statute, was used in the sense of a fee which has a qualification annexed to it"), citing 1 Bouvier's Law Dictionary (Rawle's 3d rev); *Village of Kalkaska*, 433 Mich

27

at 351-352 (referring to the county's interest as a "base fee" since it is "'debased because its duration depends upon collateral circumstances which qualify it'"), quoting Black's Law Dictionary (5th ed); *Jonkers v Summit Twp*, 278 Mich App 263, 278; 747 NW2d 901 (2008) (stating that "platted public roads convey either a mere public easement or, at most, a 'base fee' that amounts to little more than nominal title and no beneficial ownership whatsoever").[17]

We find these interpretations of the property interest at issue to be faithful to the text of the 1887 plat act. As discussed, the text of the statute limits the interest conveyed in both scope and duration: the "fee . . . [is conveyed] in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever." 1887 PA 309. This language evidences a legislative intent to *limit* the nature and extent of the government's interest to what was explicitly intended by the dedicator and to what was necessary to secure the parties' rights and responsibilities.

---

[17] The dissent quotes further from Bouvier's Law Dictionary (Rawle's rev) a portion of the definition of "base fee" that *Kirchen* did *not* include, which states that "[t]he proprietor of such a fee has all the rights of the owner of a fee-simple until his estate is determined." We find the dissent's discovery significant, but for a different reason than the dissent does. The portions of this definition that *Kirchen* did, and did not, choose to include lends further support for the proposition that this Court has always viewed a statutory "base fee" as a property interest distinct from a common-law fee simple. That is precisely *why Kirchen* did not include the portion of the definition quoted by the dissent in its discussion. We are similarly unpersuaded by the dissent's reference to a definition of "base fee" in Black's Law Dictionary (8th ed), which, to the best of our knowledge, has never been cited by a court of this state in defining a statutory "base fee" created in Michigan by the plat act of 1887, which conveys a "*fee . . . in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever*." 1887 PA 309 (emphasis added). In summary, this Court has (a) never cited *these* definitions in describing a "base fee" in Michigan, and (b) has without exception articulated a specific *contrary* definition.

28

Thus, both the text and precedent support two inferences about the nature of the property interest conveyed under the 1887 act. First, the principal purpose at which the early plat acts was directed was "to render the rights of purchasers, and the public generally, . . . definite and certain" and to "obviate[] the difficulty met with in some" common-law dedications. *Beaubien*, 2 Doug at 270. As *Patrick* explained,

> [t]he statute in question provides in express terms that the plat shall have the effect to convey the fee of land dedicated to public uses to the county. . . [There are] sufficient reasons for a statute which should give to a formal offer of dedication of public ground by a plat the effect of a conveyance by way of grant to uses, and providing a grantee. [*Patrick*, 120 Mich at 191.]

Second, just as it is clear that the statute was designed to render private and public property rights more certain than at common law, it is equally clear that the statute was *not* designed to expand the rights in dedicated lands that the government had traditionally enjoyed at common law. On this point, our early caselaw is emphatic and unequivocal. *Miller*, 31 Mich at 449; *Bradley*, 39 Mich at 166; *Backus*, 49 Mich at 115; *Detroit City R Co*, 76 Mich at 425; *Patrick*, 120 Mich at 191.[18] These decisions make plain that, just as under common law, the government's relationship to land dedicated to the public is primarily defined by the obligations that flow from the gift. See *Miller*, 31 Mich at 450 (explaining that "there can be no conclusive presumption that a grant of land for a public way is [beneficial]"). Just as under common law, the government "acquires no beneficial

---

[18] Because the dissent provides no contrary analysis of these cases, we simply do not understand how it justifies its assertion that "long-settled precedent established that a statutory 'base fee' is a fee ownership title capable of cutting off riparian rights . . . ." (Quotation marks omitted.) We do not understand which cases are the subject of this reference, because the cases cited above could not more forcefully and straightforwardly *define* and *limit* the rights conveyed in a statutory dedication to a governmental entity.

ownership of the land," *Bradley*, 39 Mich at 166; nor does it possess "the usual rights of a proprietor," *Backus*, 49 Mich at 115.

## B.  RIPARIAN RIGHTS

Riparian rights are property rights. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 191-192; 521 NW2d 499 (1994). "'Riparian land' is defined as a parcel of land which includes therein a part of or is bounded by a natural water course," *Thompson v Enz*, 379 Mich 667, 677; 154 NW2d 473 (1967), and the owners of such land enjoy certain exclusive rights, *Thies v Howland*, 424 Mich 282, 288; 380 NW2d 463 (1985). These rights include the right to erect and maintain docks, as well as to permanently anchor boats off the shore. *Id*.

Generally, it is an "indispensable requisite" that riparian land actually touch the water. *Hilt v Weber*, 252 Mich 198, 218; 233 NW 159 (1930). Normally, "the interposition of a fee title between upland and water destroys riparian rights, or rather transfers them to the interposing owner." *Id*. However, the circumstances of this case illustrate an exception to this general rule. In *Croucher v Wooster*, 271 Mich 337; 260 NW 739 (1935), front-lot plaintiffs claimed riparian rights to a lake that was separated from their property by a highway. The highway was one "established by user." *Id*. at 339.[19] The Court surveyed foreign state authorities, including the New York case of *Johnson v Grenell*, 188 NY 407; 81 NE 161 (1907), and the Illinois case of *Illinois & Mich Canal Bd of Trustees v Haven*, 11 Ill 554 (1850), and asserted the following rule:

---

[19] Like a common-law dedication, a "highway by user" creates a public easement. *Eyde Bros Dev Co v Eaton Co Drain Comm'r*, 427 Mich 271, 282; 398 NW2d 297 (1986).

> [I]n the absence of an intention of the parties appearing to the contrary, the conveyance of a parcel of land bordering on a highway contiguous to a lake shore conveys the appurtenant riparian rights. [*Croucher*, 271 Mich at 344.] [20]

Thus, *Croucher* held that the plaintiff front-lot owners, whose land was separated from the water by a public road, possessed riparian rights.

*Croucher*'s rule should not be thought to be made up out of whole cloth. Rather, we know from a review of the rights of landowners abutting a public road that such landowners retained a possessory interest in the road that is recognized at common law and by statute. See *Clark*, 334 Mich at 657 (finding "no reason to distinguish between the 2 types of dedication for the purposes of the law of abandonment"); see also *Village of Kalkaska*, 433 Mich at 354-358 (concurring in the view that platting statutes convey "only the surface and so much of the subsurface as is necessary for street construction and municipal services") (citation and quotation marks omitted).

Between 1966 and 1976, *Croucher* was followed in four published Court of Appeals decisions. *Mich Central Park*, 2 Mich App at 197; *Sheridan*, 29 Mich App at

---

[20] *Croucher* thus recognized that a different result would obtain if the parties had evidenced an alternative intent, such as if a proprietor had reserved riparian rights. As Justice COOLEY explained in *Watson v Peters*, 26 Mich 508, 517-518 (1873):

> If, on the face of the plat, by reference to which the defendant bought, there was anything which distinctly indicated an intent on the part of the proprietors to make this case exceptional, and to reserve to themselves any rights in front of the water lots marked on it, after they should have been sold, the case would be different.

Consistent with this understanding, *Croucher* requires an express reservation by the plat proprietor in order for riparian rights not to attach to lots in the plat.

69-70; *Kempf*, 69 Mich App at 342; *McCardel*, 71 Mich App at 564-565. Whereas the road in *Croucher* was a "highway by user," the roads at issue in these cases were all statutorily dedicated under the 1887 plat act, the same act that applies in this case. The earliest of these cases, *Mich Central Park*, did not find this difference to be of any significance. Rather, it concluded that the holding that the front-lot owners had riparian rights was "squarely supported by *Croucher* . . . and the New York case of *Johnson* . . . cited therein," explaining: "In both of those cases, the lots involved were part of a plat: the road in the Michigan case had been established by user, while that in the New York case had been dedicated by the plat." *Mich Central Park*, 2 Mich App at 197-198. The Court of Appeals emphasized that "[t]he only exception" to this rule "is where there is land in private ownership lying between" the road and the waterway. *Id*. at 198.

When the Court of Appeals next considered the issue in *Sheridan*, 29 Mich App at 67, it framed the question as whether the front-lot plaintiffs had riparian rights, "such rights being derived from the common law as judicially construed by the courts of this state." *Sheridan* answered that question affirmatively, stating that "[i]t is seemingly settled in Michigan that one whose property is separated from a navigable lake solely by a public street or highway has riparian rights in that lake." *Id*. at 70. *Kempf* also treated this rule as settled, emphasizing that "*Croucher* requires an *express limitation* to prevent riparian rights from attaching to lots abutting a waterfront highway." *Kempf*, 69 Mich App at 342. Finally, in *McCardel*, 71 Mich App at 564, the Court of Appeals posed the exact question that is presented in this case-- "[w]ho owns the riparian rights" in property that is separated from a lake solely by a public street-- and once again answered in favor

of the front-lot plaintiffs.  Furthermore, *McCardel* addressed the issue of the nature of the title conveyed to the county pursuant to the 1887 act:

> The defendants ask us to distinguish *Croucher* because the government in that case had only a highway easement, whereas Roscommon County is said to have a fee simple title to the boulevard property involved in this case under the terms of the plat act in effect when the subdivision plat was recorded. 1887 PA 309. Actually, that statute provided that the government would take a fee "in trust to and for the uses and purposes therein [the plat] designated, and for no other use or purpose whatever".  Even if a distinction is possible we will not adopt it.  There are problems with the *Croucher* rule, but an exception vesting the riparian rights in the public would create problems of its own—including the need to precisely define the underlying title in every case. *Croucher* at least offers uniformity, a more attractive feature than any offered by the defendants' proposed distinction.  [*Id*. at 564-565.]

We granted leave in *McCardel* and affirmed in part and vacated in part. *McCardel*, 404 Mich at 94.  While we did not disturb the ruling that the front-lot plaintiffs had riparian rights, we did redirect the focus of the case, explaining:

> Assuming, *arguendo*, that the plaintiffs own the riparian or littoral rights as an incident of front lot ownership, it does not follow necessarily that the public does not have the right to enter and leave the water from the boulevard. The question to which the parties have devoted most of their attention in this litigation (ownership of the riparian or littoral rights) is, again, not dispositive. The question whether the public has the right to enter and leave the water from the boulevard, like the question whether they may lounge and picnic on the boulevard, depends, rather, on the scope of the dedication. [*Id*. at 97.]

With the benefit of *McCardel*, we again addressed a riparian dispute involving front-lot owners in *Thies*.  *Thies* concerned a privately platted walk running parallel to the shore. Although the back-lot defendants argued that the case should be distinguished from *Croucher* because of this fact, we disagreed.  Citing *Croucher* and its progeny approvingly, *Thies* explained:

33

The cases which have applied *Croucher* only involved ways dedicated to public use. [Citing, among other cases, *McCardel*, 71 Mich App at 560; *Kempf*, 69 Mich App at 339; *Sheridan*, 29 Mich App at 64; *Michigan Central Park*, 2 Mich App at 192.] Nevertheless, we believe that *Croucher* is equally applicable to ways dedicated to the private use of a finite number of persons. [*Thies*, 424 Mich at 290.]

*Thies* then stated that the question of who owns the appurtenant riparian rights as between "the plattors, the 'front lot' owners, or the persons to whom the way is dedicated" was "settled in this state by *Croucher*," *id.* at 291, and reiterated *Croucher*'s holding:

Unless a contrary intention appears, owners of land abutting any right of way which is contiguous to the water are presumed to own the fee in the entire way, subject to the easement. Since the owner's property is deemed to run to the water, it is riparian property. [*Id.* at 293.]

Consistent with *McCardel*'s focus on the scope of the dedication, the analysis in *Thies* did not end here. Citing *McCardel*, *Thies* stated:

Even if we conclude that defendants merely have an easement interest in the walk and alleys, they may still prevail. Plaintiffs cannot prevent defendants from erecting a dock or permanently anchoring their boats if these activities are within the scope of the plat's dedication, and do not unreasonably interfere with plaintiff's use and enjoyment of their property. The ownership of the walk and alleys and the scope of the dedication of these lands are interrelated, but distinct inquiries. [*Id.* at 289 (citation omitted).]

In summary, Michigan's jurisprudence governing the riparian rights of front-lot owners provides several constant and guiding principles. First, front-lot owners whose property is separated by a public road running parallel to the water are deemed to have riparian rights, "such rights being derived from the common law as judicially construed by the courts of this state." *Sheridan*, 29 Mich App at 67; see also *Croucher*, 271 Mich at 345; *Thies*, 424 Mich at 291-293; *Mich Central Park*, 2 Mich App at 197; *Kempf*, 69 Mich App at 341-342; *McCardel*, 71 Mich App at 564-565; *Jonkers*, 278 Mich App at

34

269. Second, "[t]he ownership of the walk and alleys and the scope of the dedication of these lands are interrelated, but distinct inquiries." *Thies*, 424 Mich at 289. As we have seen throughout our law, all cases involving the public dedication of land "must be considered with reference to the use for which they are made . . . ." *White's Lessee*, 31 US at 438.

## C. STARE DECISIS

In approaching any case, "[s]*tare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v Tenn*, 501 US 808, 827; 111 S Ct 2597; 115 L Ed 2d 720 (1991). However, if there is any realm within which the values served by stare decisis-- stability, predictability, and continuity-- must be most certainly maintained, it must be within the realm of property law. For this reason, "[t]his Court has previously declared that stare decisis is to be strictly observed where past decisions establish 'rules of property' that induce extensive reliance." *Bott v Natural Resources Comm*, 415 Mich 45, 77-78; 327 NW2d 838 (1982), citing *Lewis v Sheldon*, 103 Mich 102; 61 NW 269 (1894); *Hilt*, 252 Mich at 198. As we explained in *Bott*:

> The justification for this rule is not to be found in rigid fidelity to precedent, but conscience. The judiciary must accept responsibility for its actions. Judicial "rules of property" create value, and the passage of time induces a belief in their stability that generates commitments of human energy and capital. [*Bott*, 415 Mich at 78.]

We need not expound on this principle, but we nonetheless remain mindful of the respect due to judicial rules of property as we decide this case.

35

## D. APPLICATION

We now turn to the lower courts' ruling that plaintiffs are not deemed riparian under Michigan law. Specifically, the Court of Appeals concluded that because "the 1887 plat act vests in the public a fee title interest," plaintiffs did not have riparian rights. *Baum*, 284 Mich App at 559. That court further concluded that "the language of the dedication in no way limits what type of use may occur on the depicted streets or alleys or who may use them." *Id*. at 562. As we believe is now quite evident, the law of this state leads inexorably to the opposite conclusions.

The lower courts' fundamental error was in their understanding of the property interest conveyed to the CCRC by the 1887 plat act. We are not left to analogy or intimation in ascertaining the law of this state governing the nature of this interest. The statute and our precedents dating back well over a century tell us all we need to know to decide this case. We know that the "fee" conveyed by the statute is held "in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever." 1887 PA 309. We know this fee conveys only "nominal title." *Bradley*, 39 Mich at 166. We know that the statute does not convey "title in the nature of a private ownership." *Miller*, 31 Mich at 449. We know that the CCRC was not conveyed any rights that were not necessary to the use and purpose for which the street was dedicated. *Kalkaska*, 433 Mich at 348; *Baldwin Manor*, 341 Mich at 430-431. And we know that the nomenclature to describe this interest is a "base fee." See, e.g., *Patrick*, 120 Mich at 191. *No* Michigan decision has ever held that a dedication of a parallel road conveys riparian rights to the

36

receiving governmental entity,[21] and *every* Michigan decision that has addressed this exact issue has held that a dedication of a parallel road does *not* divest front-lot owners of riparian rights.

Conspicuously absent from the lower courts' decisions is any significant discussion of the cases cited above, including this Court's seminal cases interpreting the early platting statutes, such as *Miller, Bradley*, and *Backus*, and the Court of Appeals own *indistinguishable* decisions, *Mich Central Park*, *Sheridan*, *Kempf*, and *McCardel*. The "judicial rule of property" reaffirmed in this opinion is so engrained in property law that it is explicitly embodied in the Michigan Land Title Standards (5th ed), Comment B in Standard No. 24.5 ("A parcel of land separated from a natural watercourse by a highway or walkway, where the highway or walkway is contiguous to the watercourse, is riparian, unless a contrary intention appears in the chain of title."). This Court is not writing on a blank slate in this case, any more than was the Court of Appeals in *McCardel* when it held on identical facts that front-lot owners are deemed riparian; or was this Court in *Croucher*, 271 Mich at 344, when it offered that "the conveyance of a parcel of land bordering on a highway contiguous to a lake shore conveys the appurtenant riparian rights"; or was Justice COOLEY in *Miller*, 31 Mich at 449, when he stated that the early

---

[21] If such a case existed, it would certainly offer support for the dissent's position. However, neither our research nor that of the parties and amici curiae-- nor that of the dissent-- has identified such a case. Given the history of the statute at issue, as well as the frequency with which this Court once considered disputes regarding statutory dedications, we find the absence of any authority for the proposition that a "base fee" conveys riparian rights to be highly significant.

plat acts do not convey "title in the nature of a private ownership." The law of dedication is deeply rooted in the legal traditions, and in the caselaw, of this State.[22]

## E. RESPONSES TO DEFENDANT

For the benefit of the bench and bar, and the parties, we will briefly consider the principal arguments of the parties, none of which, in our judgment, is sufficient to overcome the clear and longstanding law of this state. First, defendant contends, and the lower courts agreed, that the 1887 plat act "plainly" and "unambiguously" conveyed to the county a "fee" title to Beach Drive. As the trial court reasoned: "The conveyance of the fee for the Beach Drive property to the public is significant. . . . Because [plaintiffs] do not hold fee title to the waterfront land in front of their respective lots, they do not possess riparian rights." The lower courts were, of course, correct that the statute conveys a "fee." The lower courts were also correct that our goal when interpreting a statute is "to ascertain and give effect to the intent of the Legislature" as reflected in the language of the statute, and if such language is "clear and unambiguous," we need go no further. *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003). However, our duty in construing a statute requires us to consider the "meaning of the critical word or phrase *as well as* 'its placement and purpose in the statutory scheme.'" *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (emphasis added), quoting *Bailey v*

---

[22] Because the dissent "decline[s] to address whether the [majority's] misreading . . . should be upheld today," while also recognizing that "this may be one of those cases in which the incorrect but, apparently, extensively relied-upon rule . . . should be allowed to stand [as a matter of stare decisis]," we do not understand why the dissent characterizes itself as a "dissent," when, based upon some actual resolution of these matters, it might just as well turn out to be a "concurrence."

*United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995). That is, all words and phrases must be considered in statutory *context*. The 1887 plat act does not convey a "fee," period. Rather, it conveyed a "fee . . . in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever." By the statute's terms, *this* "fee," this particular fee, which is strictly limited in scope and duration, bears little relation to a common-law fee, which is "the broadest property interest allowed by law . . . ." Black's Law Dictionary (8th ed). And, as discussed, our caselaw provides ample guidance on the nature of this particular property interest-- this "base fee"-- as a well as its purpose in the statutory scheme. The early plat acts were not designed to expand the rights that the government had traditionally enjoyed at common law in dedicated lands, see, e.g., *Miller*, 31 Mich at 449; rather, they were designed to render private and public property rights more certain than at common law, see, e.g., *Beaubien*, 2 Doug at 270; *Wanzer*, 3 Mich at 16.

Accordingly, when we apply the fundamental riparian doctrine by which "the interposition of a fee title between upland and water destroys riparian rights," *Hilt*, 252 Mich at 218, with the correct understanding of this fee interest, we reach a different conclusion than the lower courts did. We find it quite clear that a statutory "base fee" is *not* the type of "fee title" capable of "destroy[ing] riparian rights." *Id.* The "fee title" capable of destroying riparian rights is a common-law fee title, a distinct property interest.[23] Again, we need not speculate about this conclusion because our precedent

---

[23] This appears to be the crux of our disagreement with the dissent. While we agree with the proposition that a common-law fee title cuts off riparian rights, we see a clear

39

unequivocally dictates that the statute did not convey "title in the nature of a private ownership." *Miller*, 31 Mich at 449. That is, it did not convey title in the nature of a common-law fee. Recognizing this distinction, the first decision of the Court of Appeals to address the precise issue before us properly applied the riparian doctrine when it stated that "[t]he only exception" to the rule deeming front-lot owners riparian "is where there is land in private ownership lying between" the road and the waterway. *Mich Central Park*, 2 Mich App at 198.[24] By failing to give proper weight to context and purpose, and by failing to fully consider precedents, the lower courts misconstrued the "fee" interest conveyed to the CCRC under the 1887 plat act when they held that this particular property interest was capable of divesting front-lot owners of their riparian rights.

Second, defendant criticizes decisions of the Court of Appeals that have deemed front-lot plaintiffs riparian in the instant circumstances, arguing that the Court in *McCardel* misread and erroneously relied on *Croucher* because *Croucher* concerned an easement created by a highway by user and *McCardel*, like the instant case, concerned a

distinction between a common-law fee and a statutory "base fee," as that interest has long been defined in Michigan.

[24] As discussed earlier, the other consideration in applying this rule is whether the plat proprietor has conveyed the lots "without reserve." *Turner*, 65 Mich at 462. In Michigan, such reservation is never presumed. As Justice COOLEY stated in *Watson*, 26 Mich at 517 (1873), when a proprietor "conveys with the water as a boundary, it will never be presumed that he reserves to himself proprietary rights in front of the land conveyed . . . ." In other words, an express reservation of rights is necessary. For this reason, the fact that plaintiffs' deeds do not contain specific language granting riparian rights is inconsequential. Under the law of this state, it would have taken an express reservation of rights by the proprietor to affect their riparian rights. No such reservation exists in plaintiffs' deeds, nor is there a suggestion of the existence of any such reservation in the chain of title.

"fee" created by a statutory dedication. For reasons already discussed, we find

*McCardel*'s decision that front-lot owners were riparian to be the only decision that the

Court could have made that would have been faithful to the statute and consonant with

Michigan's longstanding jurisprudence. We have found *no* authority on which the court

in *McCardel* could have located riparian rights anywhere else than it did.

Furthermore, we do not think it necessary or helpful to focus on the distinction

between an easement and a fee, as defendant urges.[25] We need not frame the issue in this

---

[25] This is not to suggest, however, that a base fee and an easement are indistinguishable. Our survey of the law of dedication reveals several differences. First, when an easement is created by a common-law dedication, the fee in the soil remains in the proprietor. The same is not the case when the government holds a base fee. Second, because of the fact that the proprietor never parts with the fee when the government holds an easement, the owner of land abutting a public easement automatically takes free title when the road is abandoned and the easement is extinguished. By contrast, an owner of land that abuts a base fee holds a reversionary interest and takes title upon abandonment by prescribed and detailed statutory procedures. See, e.g., MCL 224.18. Third, and perhaps most importantly, our discussion of common-law and statutory dedications indicates that the rights of the receiving governmental entity in possession of a base fee are more secure and stable than those of an entity possessing a mere easement. This is because the intent to dedicate in a statutory dedication is clear and the dedicator is estopped from denying the dedication by virtue of the requirement that the plat be actually recorded. It may be difficult today to appreciate the significance of this, because disputes regarding public dedications are now relatively rare-- largely, in our judgment, because of the constancy of our law in this realm since well before the previous century-- but our early caselaw makes clear that this change in the common law was significant. *Beaubien*, 2 Doug at 270 (explaining that the plat act "obviated the difficulty met with in some" common-law dedications); *Patrick*, 120 Mich at 191 (stating that there are "sufficient reasons for a statute which should give to a formal offer of dedication of public ground by a plat the effect of a conveyance by way of grant to uses"). In sum, a base fee describes a property interest that is relatively secure and stable and that gives a governmental body using the base fee in a manner consistent with its scope full control over the estate. By contrast, a public easement created by a common-law dedication was perceived as a more vulnerable property interest open to challenge, which rendered the rights of purchasers and the public somewhat less certain.

way because Michigan law is replete with decisions that define the *precise* property interest in dispute, and we see no grounds for redefining it. Furthermore, our discussion of the law of abandonment demonstrates that the distinction between an easement created by a common-law dedication and a base fee created by a statutory dedication has never been thought to be dispositive in this regard. By common law, upon abandonment, the title of the abutting landowner, who owns the soil in the land under a public road, is freed of the easement. By statute, upon abandonment, title "vest[s] in the rightful proprietors of the lots, within the subdivision covered by the plat, abutting the street or alley." MCL 560.227a. In light of these principles, to decide that front-lot plaintiffs are not to be deemed riparian because they do not own the *soil*, as they would if the road were an easement, would be a distortion of well-established law recognizing that plaintiffs and similarly situated property owners have a multifaceted legal relationship to a public road that includes a specifically defined possessory interest. It is beyond dispute that Michigan courts "are bound to respect" these "special interests" in such roads. *Mills*, 85 Mich at 670 (MCGRATH, J., dissenting on other grounds).

On this point, we find relevant the words of Justice MCGRATH in *Mills*:

"Of what does property practically consist, but of the incidents which the law has recognized as attached to the title or right of property? Is not the idea of property in or title to lands, apart from and stripped of all its incidents, a purely metaphysical abstraction, as immaterial and useless to the owner as 'the stuff that dreams are made of?' . . . Property does not consist merely of the right to the ultimate particles of matter of which it may be composed,—of which we know nothing,—but of those properties of matter which can be rendered manifest to our senses, and made to contribute to our wants or our enjoyments." [*Id*. at 667-668, quoting *Grand Rapids Booming Co v Jarvis*, 30 Mich 308, 320-321 (1874).]

42

The riparian rights that plaintiffs and similarly situated property owners enjoy in Michigan are an "incident[] which the law has recognized as attached to the title or right of property." *Id.* at 667. These rights are just as real as the soil under the street and, to these citizens, at least as valuable. Accordingly, we find defendant's analysis of *Croucher* and *McCardel* to be unpersuasive. By failing to recognize that the rule of these cases is both correct and well settled, defendant's analysis would upset the altogether reasonable expectations of front-lot owners, title insurers, and prospective front-lot purchasers throughout the state.[26]

---

[26] Defendant posits two additional arguments in an attempt to undermine the authority of *McCardel* and *Croucher*. First, it argues that an 1850 Illinois case cited in *Croucher*, *Haven*, 11 Ill 554, suggests that *Croucher* would not have deemed front-lot plaintiffs riparian if the road had been dedicated by statute. As a threshold matter, it is unclear why we would focus on this out-of-state case when our *own* caselaw on this subject is more than adequate. Clearly, it better behooves us to look to the significant number of Michigan decisions from this era that illuminate the nature of a "base fee" in this state. Moreover, we are not convinced that defendant's understanding of the citation of *Haven* in *Croucher* is correct. In surveying the persuasive law on this issue, *Croucher* cited *Haven* as contradictory authority, explaining that *Haven* "was determined by the law of Illinois by which the fee of the land under a dedicated street is held to be in the municipal corporation. *Confessedly that would not be true in the instant case*." *Croucher*, 271 Mich at 344 (emphasis added).

Defendant contends that the emphasized language demonstrates that *Croucher* saw the distinction between an easement and a "fee" as determinative. This conclusion, however, is belied by the fact that *Croucher* also cited *Johnson*, 81 NE 161, a New York case that concerned a statutory dedication and in which the court deemed the front-lot owners riparian. It is further belied by a reasonable reading of the emphasized sentence. In this sentence, we think it more likely that *Croucher* was simply recognizing that the law in Michigan was well established by the time of its decision in 1935. That is, some states treat a statutory dedication as conveying a common-law fee title. But "[c]onfessedly that would not be true in the instant case," because Michigan does not. In Michigan, a statutory dedication creates a "base fee." For these reasons, we believe this Illinois case would constitute a shaky foundation on which to ground a critical rule of

43

Third, defendant contends that *Thies* somehow changed or even impliedly overruled the rule of *Croucher* and *McCardel*, under which front-lot plaintiffs are deemed riparian. When viewed in its entirety, we find it impossible to read *Thies* as overruling or in any way altering this rule. Rather, as seen throughout the opinion, *Thies* cited *Croucher* and its progeny, including *McCardel*, in a fully approving manner, and, indeed, extended the rule of *Croucher* to the facts before it, which involved a privately platted walkway. *Thies*, 424 Mich at 291-294. Defendant's interpretation of *Thies* focuses on its statement that "[t]he relevant inquiry is . . . whether the abutting landowner owns the fee in the way which separates his property from the water[.]" *Id*. at 290. Neither this sentence nor the treatise quotation that follows takes Michigan property law in any new direction. Rather, *Thies* was simply setting forth the uncontested riparian

---

property in Michigan, and one that would not satisfactorily explain to citizens of this state why their reasonable expectations should be upset.

By the same token, we are not persuaded by defendant's reliance on MCR 7.215(C)(2) and (J)(1), governing the precedential effect of published Court of Appeals opinions under the rule of stare decisis, and do not think that this court rule provides an adequate explanation to these citizens. While the Court of Appeals may not have been bound to follow *McCardel* and other pre-1990 decisions, it was bound to follow *Miller*, 31 Mich at 449; *Bradley*, 39 Mich at 166; *Backu*s, 49 Mich at 115; *Kirchen*, 291 Mich at 112; *Village of Kalkaska*, 433 Mich at 353-358; and *Jonkers*, 278 Mich App at 278, all of which held that a statutory base fee conveys only nominal title. Further, as we have emphasized, in the area of property law, important prudential considerations favored the Court of Appeals following its own pre-1990 precedents. That is, the longer a judicial rule of property has endured, and the more time has elapsed since its establishment, the greater the public's reliance. Under either the standard set forth in *Robinson v Detroit*, 462 Mich 439, 464-466; 613 NW2d 307 (2000), or the standard articulated by the Chief Justice in *Petersen v Magna Corp*, 484 Mich 300, 338-339; 773 NW2d 564 (2009) (opinion by KELLY, C.J.), these are highly relevant considerations in assessing the merits of stare decisis.

doctrine that "the interposition of a fee title between upland and water destroys riparian rights, or rather transfers them to the interposing owner." *Hilt*, 252 Mich at 218. There is no question that this is the *general* rule, and in articulating this, *Thies* can hardly be said to have overruled the *exception* to the general rule that is involved in *Croucher* and its progeny, as well as in this case-- that a statutory "base fee" constitutes a distinctive property interest, wholly distinct from a common law "fee title," that does not "transfer [riparian rights] to the interposing owner." *Id.* We do not see how this could have been communicated any more forcefully in *Thies* than by citing approvingly the critical authority on which this exception was grounded and extended. *Thies*, 424 Mich at 290-294, citing *Croucher*, *McCardel*, *Kempf*, *Sheridan Drive*, *Mich Central Park*, and *Johnson*.

Fourth, defendant argues, and the lower courts agreed, that the fact that plaintiffs' property is taxed as "water view" and not "waterfront" property is significant in the determination of whether the law of this state deems them riparian. We respectfully disagree. As a threshold matter, with the law presented to us, it is not clear why we would venture from our area of principal responsibility-- interpreting the law-- to decide this matter on the basis of practices that we may not fully understand and that have not been significantly briefed, such as the premises of a township's property tax assessment system. It is true that plaintiffs' properties are assessed as "water view" property and thus are taxed at a lower rate than properties assessed as "waterfront."[27] However, this

---

[27] An assessor for defendant township provided an affidavit explaining that as "water view" property, plaintiffs' properties were assessed using a figure of $2,000 a front foot

45

distinction is likely based-- we do not know for certain-- on the traditional real estate proposition that property value is a function of "location, location, location." That is, while plaintiffs' riparian rights certainly add value to their property, such property is likely to be *less* valuable than property that is spared a road separating it from the lake.[28] We do not think that plaintiffs' property tax assessment rate lends support, one way or the other, for the conclusion that they do not hold riparian rights.

We must address one last issue that was unanswered in the lower courts' decisions. That is, if the lower courts were correct that plaintiffs do not own the riparian rights to Beach Drive, *who does*? Neither lower court answered this question, an omission that would, if their decisions were left intact, introduce obvious uncertainty into the property law of this state and engender unnecessary litigation. Indirectly, however, the Court of Appeals intimated that the *county* owned such rights because, the Court concluded, the county was in "no way" limited to the type of use it may make of the road. *Baum*, 284 Mich App at 561. This conclusion is clearly erroneous and cannot stand. The first principle of the law of dedication is that all cases "must be considered with reference to the use for which they are made." *White's Lessee*, 31 US at 438. Accordingly, for over a century, this Court has consistently held that the scope of the dedication controls the resolution of this question. *Backus*, 49 Mich at 120; *Baldwin Manor*, 341 Mich at

---

along Beach Drive. Had the properties been assessed as "waterfront" property, the front-foot assessment figure would have been $6,000.

[28] As plaintiffs' counsel explained at oral argument: "[T]here is a road that goes between the platted front lot line and [plaintiffs'] riparian property, that makes that property less valuable to a third-party buyer then [sic] if no road were there."

46

430-431; *McCardel*, 404 Mich at 97; *Thies*, 424 Mich at 289. The CCRC simply cannot use the road for purposes not contemplated by the dedication itself, just as no public entity has ever been held to have "'any power to use the property for any other purpose than the one designated . . . .'" *Baldwin Manor*, 341 Mich at 430 (citation omitted).

Thus, the scope of the dedication is central to this case. The dedication includes the following language: "[T]he streets and alleys as shown on said plat are hereby dedicated to the use of the public." Read in context, the dedication grants to the public "use" that is consistent with the understood uses of "streets and alleys" at the time of the dedication. As a contemporary decision of this Court stated, "the public control [of the street] is only in trust to secure to the public those rights of a public nature that exist in public ways of that kind." *Detroit City R Co*, 76 Mich at 425. We are convinced that riparian rights were not among those "rights of a public nature" thought to "exist in public ways of [this] kind." *No* Michigan decision of that era, or any other, has held that a dedication of a road running parallel to the water conveys riparian rights.[29] Indeed, the CCRC itself never claimed to possess riparian rights until *after* the trial court's decision.[30] This conclusion is confirmed by the related, but converse, rule in Michigan

---

[29] Despite this absence of authority, the dissent would substantially redefine the property interest at stake and conclude that a base fee cuts off the riparian rights of a private landowner and conveys such rights to the county.

[30] When the CCRC filed its counterclaim, it did not assert any claim to riparian rights. Rather, its counterclaim was directed at the alleged encroachments to its property interests. It was only after the trial court ruled that plaintiffs were not deemed riparian that the CCRC changed its position. Even so, its position has continued to evolve. In its brief in opposition to plaintiffs' motion for reconsideration, it argued:

by which "public ways which terminate at the edge of navigable waters *are* generally deemed to provide public access to the water." *Thies*, 424 Mich at 295. This rule distinguishing between parallel and perpendicular roads in this context derives from *Backus*, a decision contemporaneous with the plat act of 1887.[31] *Backus* expressly recognized that the scope of the dedication controls and thus determined that when a roadway terminates at the water "the plattor intended to give access to the water . . . ." *Id.* at 296, citing *Backus*, 49 Mich at 119-120. It is significant in the instant case that the plat proprietor's intent to give access to the water at the one road in the plat that terminates at the lake was further clarified by a depiction of a dock extending into the lake at the end of this road.

As a practical matter, the rule of *Backus* is as compelling today as it was in 1882. A road running parallel to the water is very different conceptually from a road that

---

> Just because the public, under current law, cannot fully use the water adjacent to its fee ownership does not mean that the riparian rights rest or remain with someone else. It just means that such rights are not fully exercisable by anyone associated with a particular parcel of property.

In its brief in this Court, the CCRC now claims that it is entitled to use the roadway to provide public access to the water and maintain a public dock for temporary mooring while coming to and from the lake, both of which activities are inherently riparian.

[31] We further note that since 1895, the distinct rule applying to roadways terminating at the water has also been recognized by statute. MCL 67.35, the current of version of 1895 PA 3, provides in relevant part:

> The council of any village located upon or adjacent to any of the navigable waters of the state shall have the power to establish, construct, maintain, and control public wharves, docks, piers, landing places, and levees, upon any lands or property belonging to or under the control of the village, including property at the foot or end of public streets . . . .

terminates at the water. The former may provide the public access to the water *consistently with* the primary purpose of a public roadway-- "public passage for all." *Beaubien*, 2 Doug at 285. The latter cannot. It is an untenable to say that the CCRC could exercise riparian rights to Beach Drive, a paved road running parallel to the lake that undisputedly is used for year-round vehicular travel, consistently with the understood purpose of the dedication of the streets in the plat, which is to provide "public passage for all." Accordingly, we come full circle to the precept with which we began: "This being a case to which the law of dedication applies, the use for which the dedication was made must determine the extent of the right parted with by the owner of the land and acquired by the public." *Patrick*, 120 Mich at 193. We hold that, contrary to the lower courts' rulings, the CCRC cannot exercise riparian rights to Beach Drive, including granting public access to the water, because such uses are incompatible with the underlying dedication.

## V. CONCLUSION

The "fee" conveyed by the 1887 plat act is held "in trust to and for the uses and purposes therein designated, and for no other use or purpose whatsoever." 1887 PA 309. The particular property interest created by the statute, a "base fee," conveys to the receiving governmental entity only "nominal title." *Bradley*, 39 Mich at 166. A base fee in a public road running parallel to the water has never been thought to divest front-lot property owners of their riparian rights, much less convey riparian rights to the county. In the history of Michigan property law, *no* Michigan decision has ever suggested these propositions, and *every* Michigan decision that has addressed the exact issue before us

49

has concluded as we do, that riparian rights rest with the front-lot owners. On the authority of our longstanding caselaw, and mindful of the particularly compelling mandates of stare decisis in the realm of property law, we hold that plaintiffs have riparian rights, as similarly situated persons have *always* had in this state. Accordingly, we reverse and remand the case to the trial court for proceedings not inconsistent with this opinion.

Stephen J. Markman
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.

S T A T E  O F  M I C H I G A N

SUPREME COURT

2000 BAUM FAMILY TRUST, BAUM
FAMILY TRUST, JOSEPH BEAUDOIN,
SANDRA BEAUDOIN, ADELE
MEGDALL REVOCABLE TRUST, PAUL
NOWACK & JOAN NOWACK TRUST,
MARILYN ORMSBEE, MARK
SCHWARTZ, WENDY SCHWARTZ, and
THOMAS THOMASON,

        Plaintiffs/Counterdefendants-
        Appellants,

v                               No. 139617

WILLIAM BABEL, JUDY BABEL,
JAMES CAHILL, GLORIA CAHILL,
DANIEL ENGSTROM, PENNY
ENGSTROM, ARTHUR A. RANGER
TRUST, PATRICIA L. RANGER TRUST,
and CHARLEVOIX COUNTY ROAD
COMMISSION,

        Defendants/Counterplaintiffs-
        Appellees,

and

AL GOOCH, ELIZABETH GOOCH, JESSE
HALSTEAD, and LINDA HALSTEAD,

        Intervening
        Defendants/Counterplaintiffs-
        Appellees,

and

CHARLEVOIX TOWNSHIP,

Defendant-Appellee.

DAVIS, J. (*dissenting*).

I respectfully dissent, because I conclude that long-settled precedent establishes that a "statutory 'base fee'" is a fee ownership title capable of cutting off riparian rights and no precedent from this Court has established a contrary rule.

"At the common law, when the owner of land has laid it out into village lots, intersected with roads and public squares, such roads and squares are dedicated to the public use. But it is not the fee of the land which passes in such cases; the public have only an easement in the land, the fee itself for all other purposes remains in the owner." *Wanzer v Blanchard & Buckland*, 3 Mich 11, 16 (1853). However, under a *statutory* dedication pursuant to the 1887 plat act, ownership in fee actually passes to the county, and if all statutory requirements are complied with, "the title, having become vested in the county thereby, remains there still, unless such discontinuance operated to *revest the fee* in the original proprietor, or his grantee . . . ." *Id.* (emphasis added).

This Court has explained that the "statutory 'base fee'" conveyed by the plat act is "a fee which has a qualification annexed to it." *Kirchen v Remenga*, 291 Mich 94, 112; 288 NW 344 (1939). This is hardly a clarification, and even Justice COOLEY regarded it as unclear whether a statutory dedication conveyed rights that were more in the nature of a fee or an easement. *Wayne Co v Miller*, 31 Mich 447, 448-449 (1875).[1] However, 22

---

[1] A few years later, Justice COOLEY would explain that the interest passed *was* fee title, but that this was of "no special importance" because the governmental entity nevertheless held that title "only in trust for street purposes." *Backus v Detroit*, 49 Mich 110, 115; 13

years earlier, this Court had clearly concluded that a statutory dedication conveyed a real, ordinary fee title. See *Wanzer*, 3 Mich at 16. And 15 years later, this Court equally clearly concluded that a statutory dedication vested the fee of the dedicated land in the county. *Village of Grandville v Jenison*, 84 Mich 54, 65-66; 47 NW 600 (1890).[2] By the 1930s, it was settled that although a "base fee" carried with it conditions and limitations, it was not qualitatively a different *kind* of ownership interest. *Rathbun v Michigan*, 284 Mich 521, 534-536; 280 NW 35 (1938).

This Court's explanation in *Kirchen* that the term "base fee" was "used in the sense of a fee which has a qualification annexed to it" relied on 1 Bouvier's Law Dictionary (Rawle's 3d rev), p 329. *Kirchen*, 291 Mich at 112. The *rest* of the definition of "base fee" in Bouvier's Law Dictionary explains that the "qualification" to which it refers "must be determined whenever the annexed qualification requires" and that "[t]he proprietor of such a fee has all the rights of the owner of a fee-simple until his estate is determined." See 1 Bouvier's Law Dictionary (1897). In this context, "determination" is essentially a synonym for termination, or something coming to an end. See *id*. Therefore, *Kirchen* never held that a "base fee" is not a fee interest; quite the contrary, it held that it *is* a fee interest—just one that could be terminated pursuant to an attached restriction.

NW 380 (1882). Of course, *Backus* is only of marginal relevance because the street at issue there terminated at a river; it did not run parallel to the river.

[2] *Village of Grandville* has been cited more recently for the proposition that a statutory road dedication does indeed vest actual fee title in the county, albeit to be held in trust. *Village of Kalkaska v Shell Oil Co (After Remand)*, 433 Mich 348, 354 n 11; 446 NW2d 91 (1989); *Little v Hirschman*, 469 Mich 553, 557 n 4; 677 NW2d 319 (2004).

This is consistent with the definition of a "base fee" in Black's Law Dictionary (8th ed). Black's Law Dictionary treats "base fee" as a synonym for "fee simple determinable," meaning either "[a]n estate that will automatically end and revert to the grantor if some specified event occurs" or "an estate in fee simple subject to a special limitation." Black's Law Dictionary (8th ed), p 649. So the definitions relied on by *Kirchen* and present in Black's Law Dictionary both indicate that the actual estate held by the owner of a "statutory 'base fee'" is indistinguishable from that of a fee simple other than the possibility of the estate terminating at some point.

Riparian rights attach to land that actually touches water, but "interposition of a fee title between upland and water destroys riparian rights, or rather transfers them to the interposing owner." *Hilt v Weber*, 252 Mich 198, 218; 233 NW 159 (1930). Because a base fee *is* a fee title, interposition thereof between a property owner's lot and the edge of water will cut off the lot owner's riparian rights.[3]

This Court has seemingly held to the contrary, but a careful reading of that precedent reveals that this Court actually reached no such contrary conclusion. In *Croucher v Wooster*, 271 Mich 337; 260 NW 739 (1935), the plaintiffs claimed to own property between a road and Gull Lake. According to the plat map, the defendants' lots were separated from the edge of the lake only by the road, and, as with the lots in the instant case, the property descriptions terminated at the road. The plat map showed no

---

[3] Of course, the overriding consideration is always the intent of the plat proprietor, so if the lot is described as having riparian rights or touching the water, that is effectively a reservation of rights by the plat proprietor—specifically, a reservation of riparian rights for the lot. In the instant case, the lot descriptions in the plat very clearly did not extend to the water's edge.

property between the road and the water. This Court concluded that in the absence of an expressed contrary intent, if a lot was bounded by a road that itself was not separated from the water by any land, the owners of that lot possessed riparian rights in the water across the road from the lot.

Superficially, this *appears* to create a bright-line rule, and, indeed, panels of the Court of Appeals believed that it did. See *McCardel v Smolen*, 71 Mich App 560, 564-565; 250 NW2d 496 (1976), and the cases cited therein. But the Court of Appeals did not analyze *Croucher*; it simply concluded that *Croucher* had settled the issue. However, the roadway under discussion in *Croucher* had been established by user and apparently had already been in existence before the plat was created, so it was a common-law road and therefore an easement, not a "base fee" road created pursuant to the plat act.[4] *Croucher* distinguished an Illinois case in which the opposite result was reached because of a state law "by which the fee of the land under a dedicated street is held to be in the municipal corporation," establishing that the abutting lot did *not* extend under the road. *Croucher*, 271 Mich at 344, citing *Illinois & Michigan Canal Bd of Trustees v Haven*, 11 Ill 554 (1850). *Croucher* observed that "[c]onfessedly that would not be true in the instant case." *Croucher*, 271 Mich at 344. It is true in the case at bar.

This Court later explicitly clarified that the relevant inquiry is "whether the abutting landowner owns the fee in the way which separates his property from the water . . . ." *Thies v Howland*, 424 Mich 282, 290; 380 NW2d 463 (1985). If the

---

[4] This would have been the situation for most public ways that predate the first plat act. See *Baker v Johnston*, 21 Mich 319, 340 (1870).

roadway is an easement, the owners of land abutting it actually own the land under the easement in fee all the way to the water, so their property is riparian. In *Thies*, this Court explicitly held that the public way was an easement. *Id*. at 293. And in *Croucher*, it was clear from the context that the public way was an easement. So in both *Croucher* and *Thies*, the holdings that the property owners had riparian rights naturally resulted from the fact that no fee title interposed itself between the lots and the water.

It appears that in *McCardel* and the cases cited therein, the Court of Appeals simply assumed that *Croucher* had established a bright-line rule, when, in fact, it had not. It is undisputed that an easement is not fee ownership. And well-settled Michigan precedent establishes that a statutory "base fee" under the plat act *is* fee ownership.[5] Therefore, absent a contrary intent expressed by the plat proprietor, a public road created under the plat act will cut off the riparian rights of abutting landowners. *McCardel* and its predecessors were incorrectly decided.

Nonetheless, I recognize that there are cases in which the soundest and most pragmatic application of stare decisis would have this Court decline to overrule incorrectly decided precedent. This Court should, after all, consider such issues as the practical workability of the rule, the extent of reliance thereon, whether chaos or other harm would ensue from overruling it, and whether a change in facts, jurisprudence, or perspective has altered the rule's significance. See *Planned Parenthood of Southeastern Pennsylvania v Casey*, 505 US 833, 854-855; 112 S Ct 2791; 120 L Ed 2d 674 (1992).

---

[5] In other words, as this Court has so often explained, when the Legislature used the word "fee," the Legislature meant exactly what it said.

This may be one of those cases in which the incorrect but, apparently, extensively relied-upon rule from *McCardel* and its predecessors should be allowed to stand. It may be so notwithstanding the fact that the abutting property owners may not have been taxed for riparian property and may reap a windfall at the expense of the public's right of access to the water, even though plain statutory language indicates that those landowners should have no such rights. However, under the circumstances, I decline to address that possibility.

I state only that the *McCardel* line of cases from the Court of Appeals and the majority today misread the precedent of this Court. I decline to address whether the misreading of *Croucher* should be upheld today, because I am of the view that it is not possible to draw reliable conclusions about what the law should be without first understanding what the law is and how it came to be that way. From the majority's conclusion that a "statutory 'base fee'" is not true fee ownership, I respectfully dissent.

Alton Thomas Davis
Michael F. Cavanagh
Diane M. Hathaway

7